# EXHIBIT A

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 2 of 103 PageID #: 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| DEFALCO CONSTRUCTION INC. | INDEX NO. |
| Plaintiff, | |
| - against - | **COMPLAINT** |
| ACRISURE, LLC d/b/a TRAZA INSURANCE AGENCY, | |
| Defendant. | |

Plaintiff Defalco Construction Inc. ("Plaintiff" or "Defalco"), by its undersigned counsel, for its Complaint against Defendant Acrisure, LLC d/b/a Traza Insurance Agency ("Defendant" or "Acrisure"), alleges as follows:

## NATURE OF THE ACTION

1. This action seeks to recover damages suffered by Defalco as a result of multiple undeniably fraudulent Certificates of Insurance Liability ("COIs") supplied by Defendant to Defalco. The fraudulent COIs purportedly related to an insurance policy supplied by Midvale Indemnity Company ("Midvale") to policyholder A2Z Construction Services Inc. ("A2Z") with policy number CP00007397 (the "Policy").

2. Defendant served as insurance broker to both Defalco and A2Z for their general liability policies and possessed agreements between the parties. Defendant therefore knew, or was bound to know, the coverage each party required. Defendant received and reviewed the construction agreement between Defalco and A2Z, which expressly required A2Z to procure insurance naming Defalco as an additional insured. Despite possessing this contract, fully understanding its terms, and owing professional duties to both parties, Defendant placed a policy (the "Policy") with a policy period from December 10, 2022, through December 10, 2023, that wholly failed to satisfy this fundamental requirement.

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 3 of 103 PageID #: 13

3.      Specifically, Defendant negligently procured a policy for A2Z that provided no additional insured coverage whatsoever to Defalco. The Policy contains no blanket Additional Insured Endorsement. The Policy does not specifically list Defalco as an additional insured. Confronted with its own incompetence, Defendant refused to acknowledge its failure. Instead, Defendant manufactured fraudulent Certificates of Insurance ("COIs") to cover its tracks from its original mistake and falsely certifying that Defalco held additional insured status under the Policy.

4.      Defendant then transmitted these forged documents electronically to Defalco on at least two separate occasions, deliberately concealing the defective coverage it had negligently placed.

5.      The genuine COI issued with the Policy to A2Z appears as follows (A true and correct copy of the Policy containing a genuine form COI is annexed hereto as Exhibit A).

ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) |
|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | N | N | CP00007397 | 12/10/2022 | 12/10/2023 |
|  | CLAIMS-MADE [  ]  [ X ] OCCUR |  |  |  |  |  |

6.      This legitimate COI plainly shows that the Policy provides no additional insured coverage, the "Additional Insured" column indicates none. **Defendant never provided this legitimate COI to Defalco**. Instead, Defendant created and disseminated fraudulent substitutes designed to deceive Defalco into believing coverage existed where none did.

7.      When Defalco requested copies of the COIs for the Policy, Acrisure provided Defalco with a COI that looked like this:

2

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 4 of 103 PageID #: 14

| INSR LTR | TYPE OF INSURANCE | | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | Y | Y | CP00007397 | 12/10/2022 | 12/10/2023 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | X Contractual Liab | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY [ ] PRO-JECT [ ] LOC | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |

See, e.g., Exhibit B.

8.     The "Additional Insured" column was changed to "Y", meaning "Yes", a deliberate fabrication calculated to deceive Defalco and any other party relying on Defendant's representations.

9.     It is clear the Defendant reviewed the Policy and knew that it procured A2Z a policy that did not provide for additional insured coverage.

10.     Defendant reviewed the Policy. Defendant knew the Policy contained no additional insured coverage. Defendant knew the construction contracts between Defalco and A2Z required A2Z to procure a policy naming Defalco as an additional insured. Defendant knew it had failed in this duty. Rather than admit its negligence, Defendant chose fraud, manufacturing false certificates to conceal its professional malpractice.

11.     Multiple facts demonstrate Defendant's actual knowledge that the COIs were fraudulent:

    a.     Gaetano Causi ("Causi"), an employee of Defendant, personally placed the Policy and necessarily reviewed its terms before binding coverage;

    b.     The Policy itself contains a specimen COI showing "N" for additional insured—the authentic certificate Defendant possessed;

    c.     Caramante personally reviewed at least five coverage denial letters from Midvale expressly stating no additional insured coverage existed;

    d.     Weber personally reviewed at least five coverage denial letters from Midvale expressly stating no additional insured coverage existed;

3

Case 1:26-cv-01251-SDE     Document 1-2     Filed 03/04/26     Page 5 of 103 PageID #: 15

e.      Despite receiving multiple denial letters explicitly citing lack of additional insured coverage, no Acrisure employee contacted Defalco to correct the false COIs or acknowledge the coverage gap;

f.      Defendant possessed the Construction Agreement requiring additional insured coverage, creating actual knowledge of the contractual obligation Defendant's placement had failed to satisfy; and

g.      The alteration from "N" to "Y" in the additional insured field required deliberate action—this was not a typographical error or administrative oversight but intentional falsification.

12.    A2Z specifically requested a policy that provided additional insured coverage.

13.    Defendant willfully, knowingly, and deliberately misled Defalco regarding the scope of insurance coverage under the Policy. The genuine COI included with the Policy unequivocally declares no additional insureds exist. The Policy itself contains no additional insured endorsement of any kind. Defalco appears nowhere in the Policy as an additional insured. Yet Defendant, uniquely positioned as the sole entity with complete knowledge of both the Policy's actual terms and its own fraudulent scheme, repeatedly furnished Defalco with falsified COIs (Exhibit B, C). These forged documents were calculated to induce, and did induce, Defalco to believe Defendant had secured proper and adequate insurance coverage on its behalf.

14.    Defendant's material misrepresentations at the time of the Policy's procurement caused Defalco to reasonably, but incorrectly, conclude it held additional insured status under the Policy. To this day, Defendant has refused to provide Defalco with a complete copy of the Policy, perpetuating its concealment of the truth and obstructing Defalco's efforts to ascertain the full scope of Defendant's deception.

15.    Through fraud, deceit, and overt concealment the Defendant engaged in a sophisticated scheme which has resulted in great damage to Plaintiff. The Defendant have defrauded Plaintiff on a grand scale, permanently damaging the sterling reputation of Defalco in the construction industry.

4

16. Defendant constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). This enterprise consisted of Defendant, its employees, agents, and affiliated entities who functioned as a common unit with the shared purpose of: (a) concealing defective insurance placements through fraudulent documentation; (b) extracting insurance premiums and brokerage fees for coverage never actually procured; (c) obstructing policyholders' efforts to discover coverage deficiencies; and (d) evading liability for professional negligence through systematic document falsification. The enterprise operated across state lines, utilizing interstate wire and mail communications to perpetrate and conceal its fraudulent scheme.

17. Defendant engaged in multiple predicate acts of wire fraud in violation of 18 U.S.C. § 1343. On at least two separate occasions, Defendant transmitted the fraudulent COIs to Defalco by electronic means, interstate electronic mail communications, with the specific intent to defraud Defalco into believing additional insured coverage existed under the Policy. Each transmission constituted a separate and distinct act of wire fraud. These transmissions were not isolated incidents but part of a deliberate, ongoing scheme to defraud Defalco and conceal Defendant's negligent failure to procure the contracted-for coverage. Defendant knew these COIs were false. Defendant knew Defalco would rely upon them. Defendant transmitted them anyway, using interstate wires, to perpetrate their fraud.

18. Defendant's racketeering activity demonstrates open-ended continuity. The predicate acts of wire fraud and mail fraud are not isolated criminal incidents but manifestations of Defendant's regular business practices as an insurance broker. Defendant's RICO enterprise remains operational:

    a. Defendant continues to serve as insurance broker to hundreds of construction industry clients requiring additional insured coverage;

    b. Defendant continues to place liability policies and issue COIs certifying coverage;

5

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 7 of 103 PageID #: 17

c.      Defendant maintains no internal controls to prevent issuance of fraudulent COIs, as evidenced by the multiple fraudulent certificates issued to different victims on the same defective Policy;

d.      Defendant has refused to acknowledge its fraudulent conduct, implement corrective measures, or provide restitution to victims;

e.      Upon information and belief, Defendant continues to place policies that fail to meet contractual requirements, then issues false COIs to conceal placement failures;

f.      The nature of Defendant's business—insurance brokerage for construction companies with complex additional insured requirements— creates regular opportunities and financial incentives to replicate this fraudulent scheme whenever policy placement failures occur.

19.     The threat of future racketeering activity is neither speculative nor remote. Absent judicial intervention, Defendant will perpetrate identical fraud on future victims. The systematic nature of Defendant's fraudulent COI practice, combined with the absence of any internal reforms, demonstrates that the racketeering activity is a continuing feature of Defendant's business operations rather than an isolated incident involving a single policy or client.

20.     Defendant's predicate acts of wire fraud and electronic mail fraud demonstrate closed-ended continuity. The scheme operated over a defined period commencing with Defendant's negligent procurement of defective coverage in December 2022 and extending through Defendant's repeated transmissions of fraudulent COIs and their ultimate refusal to provide complete policy documentation upon discovery of the fraud. These acts were related through common participants (Defendant and its agents), common victims (Defalco), common methods of commission (electronic and postal transmission of falsified insurance certificates), and common purposes (concealing defective coverage, extracting fees, and evading liability). The predicate acts occurred with sufficient frequency, over sufficient duration, and with sufficient interconnection to constitute a pattern of racketeering activity, a series of related fraudulent acts

6

extending over multiple months and involving multiple fraudulent transmissions, all in furtherance of a unified scheme to defraud.

21. The predicate acts themselves, wire fraud and mail fraud in the insurance brokerage context, are by their nature capable of indefinite and infinite repetition. Defendant continues to operate as an insurance broker. Defendant continues to place policies for construction companies requiring additional insured coverage. Defendant continues to issue COIs certifying coverage. Defendant's refusal to acknowledge its fraud, its continuing concealment of complete policy documentation, and its failure to implement any corrective measures demonstrate that the enterprise remains active and the threat of future racketeering activity remains real and immediate. Absent judicial intervention, Defendant will replicate this scheme whenever professional negligence threatens financial liability, defrauding future victims exactly as it defrauded Defalco.

22. Defendant exploited its exclusive access to policy terms and its clients' reasonable reliance upon their expertise to manufacture false documentation, extract fees for phantom coverage, and obstruct its victims' ability to discover the fraud. This was not negligence.

23. This was organized, deliberate criminal activity conducted through the instrumentalities of a legitimate business enterprise and integrated into the regular operations of that enterprise.

24. As an actual and proximate result of Defendant's racketeering activity, Defalco has suffered severe and irreparable injury to its business and property.

25. Defalco entered into construction contracts and undertook substantial projects in reasonable but mistaken reliance upon Defendant's fraudulent representations regarding insurance coverage.

26. When claims arose requiring additional insured coverage, Defalco discovered, too late, that no such coverage existed. Defendant's fraud has exposed Defalco to potentially

7

catastrophic liability on construction projects it would never have undertaken absent the fraudulent insurance representations.

27.     Beyond direct financial losses, Defendant has destroyed Defalco's sterling reputation in the construction industry, a reputation painstakingly built over decades through honest dealing and professional excellence.

28.     When Defalco's purported insurance coverage proved illusory, contractors, project owners, and industry partners lost confidence in Defalco's ability to satisfy fundamental contractual requirements. Defalco's professional standing has been permanently damaged. Future business opportunities have been foreclosed. Relationships with long-standing partners have been irreparably harmed. All because Defendant chose fraud over competence, criminality over professional responsibility.

29.     Upon information and belief, Defendant persists in its criminal enterprise, threatening continued harm to other victims yet to discover the fraudulent scheme. Through fraudulent concealment, Defendant has prevented Defalco from discovering the full extent of their racketeering activity and the complete scope of injuries inflicted. This ongoing concealment constitutes a continuing violation, tolling any statute of limitations and demonstrating that the enterprise remains active, operational, and poised to victimize others through identical fraudulent means.

30.     Defalco is one of many victims. Defendant's RICO scheme ensnared numerous other parties who relied on the fraudulent Certificates of Insurance, including, among many others, 316 Kent Construction LLC, Domino A Partners LLC, Domino B Partners LLC, 73 Gold Street LLC, and Rise Development Partners LLC. This sampling demonstrates the breadth and systematic nature of Defendant's fraud.

8

## THE PARTIES

31.     Plaintiff is a domestic corporation, organized, existing and authorized to do business in the State of New York.  Plaintiff maintains a principal place of business at 148-14 Liberty Avenue, Jamaica, New York 11435.

32.     Plaintiff is in the business of, among other things, concrete superstructures.

33.     Upon information and belief, Defendant is a foreign limited liability company organized in the State of Michigan with its registered office at 3410 Belle Chase Way, Suite 600, Lansing, MI 48911. Defendant is registered to conduct business with the assumed name Traza Insurance Agency in the State of New York, maintaining a principal place of business at 2001 Marcus Ave w180, North New Hyde Park, NY 11042.

34.     Upon information and belief, Defendant is in the business of, among other things, insurance brokering.

## JURISDICTION AND VENUE

35.     Jurisdiction is proper pursuant to CPLR 301 and 302. This Court also has jurisdiction pursuant to the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1964 (c).

36.     Venue is proper in this Court pursuant to CPLR § 503 because Plaintiff resides in Queens, New York.

## FACTUAL BACKGROUND

### The Relationship Among the Parties

37.     Defendant served as an insurance broker to Defalco beginning on or about 2023.

38.     Upon information and belief, Defendant served as an insurance broker to A2Z beginning on or about 2023.

9

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 11 of 103 PageID #: 21

39. Beginning in 2023, Defalco and A2Z entered into a multiple construction contracts (the "Construction Agreement") whereby A2Z served as a subcontractor to Defalco on certain projects.

40. As is standard in the construction industry, the Construction Agreement required A2Z to procure an insurance policy that would provide coverage to Defalco as an additional insured.

41. Defendant was supplied with the Construction Agreement.

42. Defendant, serving as a broker to each party and knowingly receiving and possessing copies of the Construction Agreement, fully apprised of its terms and obligations, placed the Policy on behalf of A2Z with a policy period of December 10, 2022, through December 10, 2023.

43. A true and accurate copy of the Policy is attached hereto as Exhibit A.

44. The Policy includes a sample COI which declares that the Policy includes no additional insureds. *See* Exhibit A.

45. The Policy does not contain an additional insured endorsement. *See* Exhibit A.

46. Defalco is not named as an additional insured in the Policy. *See* Exhibit A.

47. Defendant represented to Defalco and, on information and belief, to A2Z that the Policy provided coverage to Defalco as an additional insured.

48. Defalco was never supplied with the full Policy.

<u>Defendant's Transmission of Fraudulent COIs</u>

49. Defalco was required to provide a COI for at least two separate jobsites where A2Z served as a subcontractor.

50. Defalco requested that Defendant provide the relevant COIs.

10

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 12 of 103 PageID #: 22

51.     A COI dated January 18, 2023 and related to the 103 Grand Street, Brooklyn, NY 11249 jobsite (the "Grand Street COI") certified that Defalco was "named as an additional insured" under the Policy.

52.     A true and correct copy of the Grand Street COI is attached hereto as Exhibit B.

53.     The Grand Street COI was transmitted from Gaetano Causi, an employee of Defendant, to a representative of Defalco via email on February 6, 2024.

54.     A COI dated February 1, 2023, and related to jobsite 320-350 Kent Ave. (the "Kent Ave COI") certified that Defalco was "named as an additional insured" under the Policy.

55.     A true and correct copy of the Kent Ave COI is attached hereto as Exhibit C.

56.     The Kent Ave COI was transmitted from Defendant to Defalco via email.

Defalco has Faced Severe Damages from Defendant's Conduct

57.     As a direct result of Defendant's fraudulently created and supplied COIs, Defalco believed it had coverage as an additional insured under the Policy when it did not.

58.     Defalco assured its customers, owners, developers, and potential clients, that it had coverage under A2Z's Policy.

59.     As a direct result of Defendant's fraudulently created COIs, Defalco was blindsided by its lack of coverage when various claims that should have been covered by the Policy were reported to Defalco.

60.     Defalco, now unable to submit claims to the Midvale Policy, was forced to submit claims to its own insurance company.

61.     Defalco was forced to immediately pay deductibles for tendered claims, in the amount of more than a million dollars as of the filing of this Complaint.

62.     Defalco, having to tender all claims to its own insurance company, has damaged its insurance loss run for the foreseeable future.

11

63. As a direct result of Defendant's fraud, Defalco's loss run has been permanently and catastrophically damaged. Over the next five years alone, Defalco will be forced to pay at least $5,000,000.00 in increased insurance premiums, deductibles, and related costs directly attributable to the uninsured claims that Defendant's fraudulent conduct allowed to accumulate against Defalco's record.

64. Before Defendant's fraud, Defalco's insurance policy with Tradesman contained no direct labor exclusions. This critical coverage feature permitted Defalco to self-perform construction work using its own employees, a fundamental operational capability that distinguished Defalco from mere general contractors and allowed Defalco to control quality, timing, and costs on its construction projects.

65. Defalco's ability to self-perform work provided enormous competitive and financial advantages. Defalco could deploy its own skilled workforce to perform any scope of work on any project. Defalco could respond immediately to changed conditions without waiting for subcontractor availability. Defalco could maintain direct quality control over critical work. And, most importantly, Defalco could capture the labor profit margin that would otherwise be paid to third-party subcontractors. This self-performance capability was integral to Defalco's business model and profitability.

66. The avalanche of uninsured Labor Law claims from A2Z, an uninsured subcontractor whose coverage Defendant fraudulently misrepresented, destroyed Defalco's loss ratio. Defalco's insurance record became so catastrophically damaged that continuing to operate with self-performed labor became financially impossible. No insurer would provide coverage for Defalco's direct labor at any remotely affordable premium. Defendant's fraud had rendered Defalco's core business model uninsurable.

12

67.     Defalco was forced to completely restructure its entire business operations. After decades of successful self-performance, Defalco had no choice but to fundamentally reinvent how it performs construction work. This was not a voluntary business decision or strategic pivot. This was economic coercion caused entirely by Defendant's fraud and the resulting destruction of Defalco's insurability.

68.     To obtain insurance coverage at any price the business could sustain, Defalco was forced to procure policies containing direct labor exclusions. These exclusions categorically prohibit Defalco from performing any construction work with its own employees. The very capability that defined Defalco's business for decades has been eliminated by contractual fiat, a direct and unavoidable consequence of the loss run damage Defendant's fraud inflicted.

69.     Defalco now must subcontract 100% of its labor to third-party contractors. Work that Defalco previously performed with its own skilled employees, under its own direct control, generating profit margins that sustained the business, must now be outsourced entirely to independent subcontractors. Defalco has been transformed from a self-performing construction company into a mere project coordinator, forced to pay others for work it possesses the expertise, workforce, and desire to perform itself.

70.     This forced subcontracting causes Defalco enormous and permanent financial damage on every single construction project. Defalco must now pay market rates to subcontractors for labor that Defalco previously performed at cost. The labor profit margin that Defalco once captured now flows to third-party subcontractors. Every project Defalco undertakes generates substantially reduced profit because Defalco must compensate an intermediary for work Defalco is perfectly capable of performing but contractually prohibited from executing.

71.     On every construction project, Defalco loses the differential between its internal cost of labor and the market price charged by subcontractors. This differential typically ranges

13

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 15 of 103 PageID #: 25

from 15% to 35% of the labor cost, depending on the trade and market conditions. Across Defalco's annual volume of construction work, this forced subcontracting results in hundreds of thousands of dollars in lost profit annually, compounding year after year for the foreseeable future. These losses are not speculative. They are mathematically certain, quantifiable on every project Defalco undertakes, and will continue indefinitely unless Defalco can restore its loss run to pre-fraud condition, a practical impossibility given the permanent nature of insurance loss history.

72.     Additionally, Defalco now must utilize the services of a Risk Management Firm to properly vet out all sub-contractors.

73.     Defalco has suffered reputational harm by ensuring its customers, its subcontractors, and its employees that it had coverage under the Policy, leading to lost business revenue.

74.     Through no fault whatsoever of Defalco, word spread throughout the New York construction industry that Defalco had provided fraudulent certificates of insurance. Owners, developers, general contractors, and construction managers learned that COIs bearing Defalco's name were false. They learned that projects involving Defalco lacked the insurance coverage the COIs represented. They learned that contractors and workers on Defalco projects filed uninsured claims. The construction industry is an insular, small and reputation-dependent community. News of insurance fraud travels instantly and indelibly. Defalco's name became associated with fraudulent documentation, unreliable coverage, and uninsured

75.     As a direct result of this reputational destruction, Defalco has been effectively blacklisted from competing for new business in the New York construction market. Owners and developers who do not know Defalco personally refuse to consider Defalco for projects. General contractors seeking reliable subcontractors eliminate Defalco from bid lists. Construction managers tasked with vetting subcontractor insurance qualifications reject Defalco outright. When

14

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 16 of 103 PageID #: 26

Defalco submits bids or proposals, potential clients investigate Defalco's history, discover the insurance problems and uninsured claims, and award the work to competitors unburdened by Defalco's now-toxic reputation. Defalco cannot obtain business from new clients. The pipeline of future work that sustains any construction company has been severed.

76.    Defalco now survives solely on work from its existing client base, those clients who maintained relationships with Defalco before Defendant's fraud was exposed and who possess sufficient personal knowledge of Defalco's integrity to understand that Defalco was the victim, not the perpetrator, of the insurance fraud. These existing clients know Defalco can be trusted. They know Defalco did not perpetrate fraud. They know Defendant defrauded Defalco exactly as Defendant might have defrauded them. But this limited client base cannot sustain Defalco's business indefinitely. Construction companies require constant infusions of new clients, new projects, and expanding market relationships to remain viable. Defalco has been cut off from market growth and confined to a steadily shrinking pool of existing relationships, a death sentence for any construction business operating in a competitive market.

77.    The reputational damage is as unjust as it is devastating. Defalco committed no fraud. Defalco did not create the false COIs. Defalco did not misrepresent insurance coverage. Defalco did not know the COIs were fraudulent. Defalco relied upon Defendant, a professional insurance broker, to procure proper coverage and provide accurate documentation. Defendant betrayed that trust, manufactured fraudulent documents, and transmitted them under circumstances that made it appear Defalco had approved or originated the misrepresentations. When the fraud was exposed, the construction industry blamed Defalco. Defendant's fraud destroyed Defalco's reputation while Defendant itself continued operating as though nothing had occurred. Defalco bears the market consequences of fraud Defendant committed. This is precisely the harm RICO was enacted to remedy and punish.

15

78. Based on the losses on its record that should have been attributed to A2Z, Defalco has been rendered an unsafe contractor and is now unable to bid on jobs with contractors that it previously qualified for.

79. In January 2026, Coastal Construction disqualified Defalco from bidding on a project located at 1 South Flagler, West Palm Beach, Florida that would have generated at least $6 million in profit.

80. Defalco was a day away from signing this Contract, and all the terms were agreed on, until Coastal saw Defalco's loss runs.

81. As a result of the foregoing, Defendant has caused immediate and ongoing compensatory and reputational damage to Defalco in an amount no less than $6,000,000.

## FIRST CLAIM FOR RELIEF

### CIVIL VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT OF 1970 ("RICO")

82. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

83. Defendant, uniquely positioned as the sole entity with comprehensive knowledge of the Policy's terms and the fraudulent scheme, repeatedly furnished Defalco with falsified COIs via email.

84. At all relevant times, Plaintiff was and is a person with the meaning of 18 U.S.C. §§ 1961(3).

85. Defendant Acrisure LLC is a "person" distinct from the Enterprise within the meaning of 18 U.S.C. § 1961(3), capable of holding legal and beneficial interests in property.

86. Acrisure LLC conducted the affairs of the Fraudulent Documentation Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

16

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 18 of 103 PageID #: 28

87.     The Fraudulent Documentation Enterprise functioned as an ongoing organization with: (1) longevity, operating from at least December 2022 through February 2024; (2) structure, with Causi procuring defective policies, creating fraudulent COIs, and transmitting them to victims; Caramante supervising accounts and reviewing coverage denial letters without correcting the fraud; Weber managing client relationships and reviewing denial letters without disclosure; and Nunez transmitting fraudulent COIs to additional victims; and (3) a common purpose of concealing defective insurance placements, extracting brokerage fees for phantom coverage, and evading liability for professional negligence through systematic document falsification. Caramante, reviewed at least 5 claims denial letters from Midvale stating no additional insured coverage existed. Despite personally reviewing the Policy and knowing it contained no additional insured coverage, Caramante failed to notify Defalco or correct the false COIs, allowing fraud to continue. Weber reviewed at least 5 claims denial letters from Midvale stating no additional insured coverage existed. Despite personally reviewing the Policy and knowing it contained no additional insured coverage, Caramante failed to notify Defalco or correct the false COIs, allowing the fraud to continue.

88.     In 2023 through 2024, Nunez sent Plaintiff copies of the fraudulent COIs and communicated with other false additional insureds.

89.     A civil RICO claim requires: (1) a violation of the RICO statute, 18 USC § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of section 1962.

90.     To assert a violation under section 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity.

91.     Defendant's conduct was the creation and transmission of fraudulent COIs.

17

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 19 of 103 PageID #: 29

92.     Defendant, a limited liability company ("LLC"), plainly fits the definition of an enterprise under the RICO statute.

93.     Defendant's transmission of emails in furtherance of its fraudulent activity constitutes wire fraud, an enumerated racketeering activity under the RICO statute.

94.     Defendant's transmission of no less than two emails establishes a pattern of its racketeering activity.

95.     Defendant, an LLC, violated section 1962 of the RICO statute by creating fraudulent COIs and then transmitting those COIs at least twice through email to Defalco, in furtherance of its scheme to defraud Defalco, its customers, its subcontractors, and its employees.

96.     Acrisure devised and executed a scheme to defraud Defalco by: a) Knowing the Policy contained no additional insured coverage; b) Knowing the Construction Agreement required such coverage; c) Knowing Defalco would rely on COIs to verify coverage; d) Deliberately creating COIs falsely representing coverage existed; e) Transmitting those COIs to induce Defalco's reliance; f) Concealing the true coverage limitations from Defalco; and g) Profiting from brokerage fees while failing to procure requested coverage.

97.     Defendant used the facilities of commercial interstate carriers and interstate wires or caused commercial interstate carriers and interstate wire providers to be used for the purpose of advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud within the meaning of 18 U.S.C. § 1343.

98.     On or about the dates listed below, in New York and elsewhere, for the purpose of executing and attempting to execute a scheme and artifice to defraud, and for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, material omissions and promises, the RICO Defendant did transmit and cause to

18

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 20 of 103 PageID #: 30

be transmitted in interstate commerce by means of wire communication, the following transmissions:

     a.    2024, Gaetano Causi, an employee of Acrisure acting within his scope of employment, emailed a COI dated January 18, 2023 and related to the 103 Grand Street, Brooklyn, NY 11249 jobsite, to Plaintiff's employee, which certified that Defalco was "named as an additional insured" under the Policy.

     b.    2024, Gaetano Causi, an employee of Acrisure acting within his scope of employment, emailed a COI dated February 1, 2023 and related to jobsite 320-350 Kent Ave., to Plaintiff's employee, which certified the same.

     c.    On February 6, 2024, Gaetano Causi, an employee of Acrisure acting within his scope of employment, transmitted via email for the second time the Grand Street COI dated January 18, 2023. The email was sent from gcausi@acrisure.com to mabruzzi@defalcoconcrete.com at Defalco. The COI falsely stated 'Defalco Construction Inc. is named as an additional insured' when Causi knew the Policy (CP00007397) contained no such coverage, as evidenced by the Policy itself which Acrisure had placed and possessed.

99.    These three communications are all examples or wire fraud, and therefore establish a pattern sufficient to satisfy 1962(c).

100.    At no time after receiving the fraudulent COI on February 6, 2024, did Causi, Caramante, or Weber, pull the Policy and verify if additional insurance coverage was provided to Defalco.

101.    Upon information and belief, Defendant continues to serve as insurance broker to hundreds of construction clients.

102.    Upon information and belief, Acrisure's fraudulent COI practice remains ongoing.

103.    Acrisure's business model depends on issuing COIs that misrepresent coverage to satisfy contract requirements.

104.    Acrisure maintains no internal controls to prevent fraudulent COI issuance.

105.    Numerous employees of Defendant had the opportunity to look at the Fraudulent COIs and the policy and identify the wrongdoing, but no one did.

19

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 21 of 103 PageID #: 31

106. Upon information and belief, Defendant claims it did not know fraudulent COIs were being issued. Yet every claim submitted under the Policy was denied on the ground that no party held additional insured coverage. This pattern of universal denials should have raised immediate red flags. It did not, because no one reached out to Plaintiff on Defendant's behalf.

107. Instead, Defendant dug its head into the sand and accepted, endorsed and relied on the Fraudulent COIs to Defalco's detriment.

108. As a direct result of Defendant's violation of section 1962, Defalco believed it had coverage as an additional insured under the Policy when it did not.

109. Defalco is one of many victims. Defendant's RICO scheme ensnared numerous other parties who relied on the fraudulent Certificates of Insurance, including, among others, 316 Kent Construction LLC, Domino A Partners LLC, Domino B Partners LLC, 73 Gold Street LLC, and Rise Development Partners LLC. This sampling demonstrates the breadth and systematic nature of Defendant's fraud. Each of these parties were sued and attempted to tender their claims to the Policy, but those claims were denied because Defendant did not procure a Policy with additional insurance coverage.

110. In 2023, 316 Kent Construction LLC received a fraudulent COI, falsely representing it held additional insured status under a policy Acrisure placed. When 316 Kent was sued on February 16, 2023 for an amount to be determined at trial, it tendered to the Policy and the claim was denied because Acrisure had failed to procure additional insured coverage.

111. In 2023, 73 Gold Street LLC and Rise Development Partners, LLC received a fraudulent COI, falsely representing they held additional insured status under a policy Acrisure placed. When 73 Gold Street LLC and Rise Development Partners, LLC were sued on March 15, 2023 for an amount to be determined at trial, it tendered to the Policy and the claim was denied because Acrisure had failed to procure additional insured coverage.

20

112. In 2023, 73 Gold Street LLC and Rise Development Partners, LLC received a fraudulent COI, falsely representing they held additional insured status under a policy Acrisure placed. When 73 Gold Street LLC and Rise Development Partners, LLC were sued on February 6, 2023 for an amount to be determined at trial, it tendered to the Policy and the claim was denied because Acrisure had failed to procure additional insured coverage.

113. As a direct result of Defendant's violation of section 1962, Defalco has faced and will continue to face current and future monetary and reputational damages.

114. Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for Defendant's civil RICO violations.

115. Defalco's injuries flowed directly from Defendant's racketeering activity. But for Defendant's fraudulent COIs transmitted via wire fraud, Defalco would have:

      a.     Immediately discovered lack of coverage;

      b.     Demanded A2Z obtain proper coverage or terminated subcontract;

      c.     Avoided tendering claims to its own insure; and

      d.     Maintained clean loss runs and bidding qualifications.

116. The racketeering activity was the direct and proximate cause of Defalco's $15,000,000.00 in losses.

117. Acrisure's RICO violations injured Defalco's business by: forcing payment of over a million dollars in deductibles (property injury) and destroying Defalco's loss runs (business injury). Defendant's RICO violations have Disqualified Defalco from $6,000,000 in bidding opportunities (business injury) and have damaged, and continue to damage, its business relationships and reputation (business injury).

118. Defalco suffered the following injuries directly caused by Defendant's RICO violations:

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 23 of 103 PageID #: 33

a. Past Deductible Payments: $1,247,000 in insurance deductibles paid for claims that should have been covered by the A2Z Policy (property injury);

b. Future Premium Increases: $5,000,000 in increased insurance premiums, higher deductibles, and related costs over the next five years directly attributable to the fraudulently caused loss run damage (business injury);

c. Lost Coastal Contract: $6,000,000 in lost profit from the disqualification from the 1 South Flagler project (business injury);

d. Loss of Self-Performance Capability: At least, $2,500,000 representing the present value of lost profit margins on labor that Defalco must now subcontract rather than self-perform due to forced direct labor exclusions in its insurance policies (business injury);

e. Risk Management Costs: At  least, $250,000 in costs to retain risk management firms to vet subcontractors, a service previously unnecessary (business injury);

f. Additional quantifiable damages to be proven at trial.

g. TOTAL: Not less than $15,000,000 in compensatory damages, to be trebled to $45,000,000 pursuant to 18 U.S.C. § 1964(c).

119.  Defalco was directly and distinctly injured by Defendant in their business and property in an amount of not less than $15,000,000.00, together with interest accruing thereon by reason of the multiple violations of 18 U.S.C. §1962(c) committed by Defendant.

120.  Upon information and belief, in engaging in said pattern of racketeering activity, Defendant used the United States mail, wire communications to be transported across state lines.

121.  Based upon the foregoing, Defendant has engaged in a pattern of racketeering, constituting an open-ended pattern of racketeering which closed in 2024.

122.  By reason of the foregoing, Defendant has damaged Defalco in the sum of not less than $15,000,000.00, to be trebled pursuant to statute, together with interest accrued thereupon and attorneys' fees.

123.  Pursuant to the civil RICO statute, Defalco is entitled to trebled damages and attorneys' fees and costs.

22

## SECOND CLAIM FOR RELIEF

NEGLIGENCE

124.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

125.    An insurance broker has a duty to provide due care in its insurance brokerage transaction.

126.    The most basic duty of an insurance broker is to procure insurance coverage specifically requested by its policyholder.

127.    A2Z, Defendant's policyholder, specifically requested that Defendant secure a policy which provides coverage to Defalco as an additional insured.

128.    Defendant, with possession of the Construction Agreement, knew that A2Z's purpose of securing insurance was to provide coverage to Defalco.

129.    Defendant breached its duty by failing to procure insurance with coverage for Defalco as an additional insured.

130.    Defalco has been damaged by its lack of coverage, which Defendant had a duty to procure, under the Policy.

131.    Defendant's breach is the actual and proximate cause of Defalco's injuries.. As a direct and proximate result of Defendant's fraudulent scheme, Defalco has suffered severe and irreparable harm to its business reputation in the construction industry.

132.    When the fraudulent COIs were exposed, Defalco's business relationships were destroyed. Clients, contractors, and industry partners lost trust in Defalco's ability to maintain proper insurance coverage and manage risk—fundamental requirements in the construction business.

23

133.    This reputational damage has directly resulted in Defalco's inability to secure new clients and projects. Prospective clients refuse to engage Defalco due to concerns about its insurance practices and the fraud scandal, despite Defalco being the victim rather than the perpetrator.

134.    The construction industry operates on reputation and trust. Defendant's fraud has branded Defalco as a company entangled in an insurance fraud scheme, making it toxic to potential clients regardless of Defalco's innocence in the matter.

135.    Defalco has lost specific business opportunities valued at over $3,000,000 as a direct result of this reputational damage. Clients who would have otherwise engaged Defalco's services have walked away or refused to enter into contracts due to the taint of Defendant's fraudulent conduct.

136.    This loss is ongoing. Each day that passes without restoration of Defalco's reputation represents continued lost business opportunities and further economic harm.

137.    Defalco seeks $3,000,000 in compensatory damages for loss of business opportunities and damage to reputation, an amount that reflects only a portion of the actual and continuing harm caused by Defendant's fraud.

138.    Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for negligence.

## THIRD CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

139.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

24

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 26 of 103 PageID #: 36

140. Defendant, engaged in the business of insurance brokering, knew that its policyholders, additional insureds, and interested third parties generally rely on COIs for the particular purpose of determining coverage status.

141. Defendant, engaged in the business of insurance brokering, possesses unique or special insurance expertise.

142. Defendant, serving as broker to Defalco, stood in a special position of confidence and trust with Defalco.

143. Defendant, serving as broker to A2Z for the purpose of proving coverage for Defalco as an additional insured, special position of confidence and trust with Defalco.

144. Defendant was aware that its statement, the COIs it created and transmitted to Defalco, would be used for the particular purpose of Defalco ensuring that it, and by extension its customers, subcontractors, and employees, were protected under the Policy as an additional insured.

145. Defalco relied on Defendant's statement in furtherance of the purpose of believing it had insurance coverage as an additional insured under the Policy.

146. Defendant, through its transmission of the COIs to Defalco, linked its statement to Defalco and understood Defalco would rely on its statement.

147. Defendant, through its role as a broker to both Defalco and to A2Z, linked its statement to Defalco and understood Defalco would rely on its statement.

148. Defendant stood in a position of trust and confidence as to Defalco, which it exploited by issuing false COIs that it knew Defalco would rely on for the purpose of determining its insurance coverage.

149. Defalco has been damaged by Defendant's negligent misrepresentation through the COIs that the Policy it procured for A2Z provided coverage to Defalco.

25

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 27 of 103 PageID #: 37

150. Defendant's negligent misrepresentation is the actual and proximate cause of Defalco's injuries.

151. Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for negligent misrepresentation.

## FOURTH CLAIM FOR RELIEF

### FRAUD

152. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

153. Acrisure, serving as the insurance broker to A2Z and Defalco and having sold the Policy to A2Z, knew what coverage was or was not afforded by the Policy.

154. Acrisure's creation of COIs which purported to name Defalco as an additional insured, where no additional insured coverage existed, was a misrepresentation or material omission of fact.

155. Acrisure knew that its misrepresentation or material omission of fact was false, because it had the real Policy and COI in its file.

156. Acrisure created the COIs for the purpose of inducing Defalco to rely on the COI to believe it had insurance coverage.

157. Defalco justifiably relied on Acrisure's misrepresentation or material omission where it trusted its own insurance broker and insurance broker of its subcontractor to provide COIs that accurately reflected existing insurance coverage.

158. Acrisure never provided Defalco a copy of the Policy, so Defalco has to rely on Acrisure, the company Defalco was paying to manage its risks. Acrisure never provided Defalco a copy of the Policy. Defalco had no choice but to rely on Acrisure—the very company Defalco paid to manage its insurance risks.

26

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 28 of 103 PageID #: 38

159. Acrisure created fraudulent Certificates of Insurance for the express purpose of deceiving Defalco about its status as an additional insured under the Policy.

160. Causi then procured the Policy knowing it lacked additional insured coverage. He also knew the contracts between Defalco and A2Z required A2Z to purchase insurance naming Defalco as an additional insured. Rather than fulfill this contractual obligation, Causi chose deception.

161. **Who:** Acrisure and Causi

162. **What:** Acrisure provided fraudulent Certificates of Insurance intended to cause Plaintiff to rely on Acrisure's fraudulent representation that the Policy included Additional Insured status.

163. **How**: By deliberately altering the Certificate of Insurance. Causi changed the "N" (No) under "Additional Insured" to a "Y" (Yes). This falsification had one purpose: to make Defalco believe it held additional insured status under the Policy when it did not.

164. **Intent:** Causi's intent is obvious. He knew Defalco would rely on this fraudulent COI to verify compliance with the contractual insurance requirements. That reliance was the entire point of the fraud.

165. **When**: 2023 and 2024.

166. Defalco has been damaged by its lack of coverage under the Policy which Acrisure led it to believe existed by creating COIs which claimed to supply coverage not available under the Policy.

167. Defalco's reliance on the fraudulent COIs caused significant injury to Defalco.

168. Defalco's reliance on the fraudulent COIs was justifiable and reasonable under the circumstances:

    a.    Acrisure served as Defalco's own insurance broker, creating a fiduciary relationship requiring Defalco's trust;

27

b.    Acrisure possessed unique expertise in insurance coverage that Defalco, a construction company, lacked;

c.    In the construction industry, COIs issued by insurance brokers are universally accepted as reliable documentation of coverage— demanding the underlying policy for verification would be extraordinarily unusual and suggest distrust of the broker;

d.    Acrisure deliberately withheld the complete Policy from Defalco despite requests, preventing Defalco from discovering the fraud through independent verification;

e.    Acrisure's status as broker to both Defalco and A2Z created the appearance of aligned interests and reduced any reason for Defalco to doubt Acrisure's representations; and

f.    A reasonable person in Defalco's position would rely on COIs issued by their own insurance broker—requiring independent verification would render the insurance brokerage relationship meaningless and undermine the entire purpose of retaining professional insurance expertise.

169.    Based on the foregoing, Defalco is entitled to recovery against Acrisure on its claim for fraud.

## FIFTH CLAIM FOR RELIEF

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

170.    Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

171.    Defalco as part of its regular business activity bids on prospective construction projects.

172.    Defalco has prospective business relationships with each business it submits a bid of its services to.

173.    Defendant's fraudulent COI's, created by unlawful means, was the cause of Defalco's inability to tender claims to the Policy.

174.    Defalco's inability to tender claims to the Policy resulted in Defalco tendering claims to its own insurance policies.

28

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 30 of 103 PageID #: 40

175. Based on the losses on its record that, but for Defendant's conduct, should have been attributed to the A2Z Policy, Defalco has been rendered an unsafe contractor and is now disqualified as a bidder on jobs with contractors that it previously qualified for.

176. Each time Defalco is disqualified to bid, its business relationship with that contractor is injured. In January 2026, Coastal Construction disqualified Defalco from bidding on a project located at 1 South Flagler, West Palm Beach, Florida that would have generated at least $6 million in profit.

177. Defalco was a day away from signing this Contract, and all the terms were agreed on, until Coastal saw Defalco's loss runs.

178. The loss runs are riddled with claims that were foisted on Defalco's insurance because of Defendant's fraud.

179. Defalco's lost prospective business opportunities are a direct result of Defendant's tortious interference with those business relationships.

180. Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for tortious interference with prospective business relationships.

## SIXTH CLAIM FOR RELIEF

### BREACH OF FIDUCIARY DUTY

181. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

182. Acrisure had a special relationship to Defalco serving as insurance broker to both Defalco and its subcontractor, A2Z.

183. Acrisure had a special relationship to Defalco and A2Z, evidenced by Acrisure's possession of the Construction Agreement.

29

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 31 of 103 PageID #: 41

184.    As the insurance broker to both Defalco and A2Z, Defendant had superior knowledge, therefore Defendant owed Defalco a fiduciary duty. Defendant knew that the Policy did not include additional insured coverage. Defendant was in a position if knowledge and trust with Defalco, and Defendant failed to live up to the duty.

185.    Acrisure owed Defalco fiduciary duties due to this special relationship, including the duties to act with the utmost good faith, loyalty, and fidelity solely in the interest of its client.

186.    Defendant breached its fiduciary duty to Defalco by:

    a.    Failing to procure insurance coverage that A2Z specifically requested and required;

    b.    Failing to procure insurance coverage that Defalco specifically required;

    c.    Misrepresenting the coverage available under the Policy through fraudulent COIs;

    d.    Exploiting its position of trust and confidence to deceive Defalco about the existence of additional insured coverage;

    e.    Prioritizing its own interests or the interests of A2Z over Defalco's interests;

    f.    Failing to disclose any conflict of interest that may have arose from its dual representation of both parties to the Construction Agreement;

    g.    Failing to disclose that the Policy it placed for A2Z did not include the additional insured coverage required by the Construction Agreement;

    h.    Altering a Certificate of Insurance with the intent to deceive Defalco; and

    i.    Failing to advise Defalco that it lacked coverage under the Policy.

187.    Defendant's breach of fiduciary duty was willful, wanton, and demonstrated a reckless disregard for Defalco's rights and interests.

188.    As a direct and proximate result of Acrisure's breach of fiduciary duty, Defalco has suffered and will continue to suffer substantial damages.

189.    Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for breach of fiduciary duty.

30

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 32 of 103 PageID #: 42

190. Defalco is entitled to punitive damages for Defendant's willful and wanton breach of fiduciary duty.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF GENERAL BUSINESS LAW SECTION 349

191. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

192. Section 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"

193. Subsection (h) creates a private right of action for any person who has been injured by a violation of section 329 to bring an action seeking to enjoin the violation, recover actual damages, or both.

194. Defendant, by creating and disseminating fraudulent COIs through its role as an insurance broker in New York State, has engaged in deceptive acts or practices in the conduct of those services.

195. Defalco is entitled to enjoin Acris Defendant ure from its ongoing deceptive behavior and recover the full amount of its actual damages.

196. Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim Defendant's violation of section 349 of the General Business Law.

197. Defendant's fraudulent COI practice is consumer-oriented within the meaning of § 349 because:

    a. Defendant issues thousands of COIs annually to construction companies throughout New York State;

    b. The practice of issuing COIs is standardized across Acrisure's insurance brokerage operations;

    c. The fraudulent scheme affected not only Defalco but also, among many others, 316 Kent Construction LLC, Domino A Partners LLC, Domino B

31

Partners LLC, 73 Gold Street LLC, and Rise Development Partners LLC, demonstrating the practice's broad application;

d.     Upon information and belief, Defendant maintains no internal controls to verify COI accuracy before issuance, evidencing that the fraudulent practice is systematic rather than isolated to Defalco's circumstances;

e.     The practice affects the public interest by undermining the reliability of insurance verification documentation throughout the construction industry, an industry heavily regulated due to its public safety implications.

198.     Defendant's conduct was materially misleading because reasonable construction companies rely on COIs issued by insurance brokers to verify coverage compliance with contractual requirements. No reasonable contractor would anticipate that a COI issued by a licensed insurance broker might be entirely fabricated.

199.     Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim Acrisure's violation of section 349 of the General Business Law.

## EIGHTH CLAIM FOR RELIEF

### CONSPIRACY TO VIOLATE RICO 18 U.S.C. § 1962(d)

200.     Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs as though set forth fully herein.

201.     The Individuals—Causi, Caramante, Weber, and Nunez—conspired with each other and with Acrisure to violate 18 U.S.C. § 1962(c).

202.     The conspiracy is evidenced by:

a.     Causi's placement of a policy he knew lacked required coverage;

b.     Causi's creation and transmission of the initial fraudulent COIs;

c.     Caramante's review of denial letters expressly stating no additional insured coverage existed, followed by his deliberate failure to notify Defalco or correct the false COIs;

d.     Weber's review of the same denial letters and identical failure to correct the fraud;

32

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 34 of 103 PageID #: 44

e.  Nunez's transmission of fraudulent COIs in 2023-2024 with knowledge of their falsity; f. The coordinated refusal to provide Defalco with complete policy documentation;

g.  The absence of any internal controls or procedures to prevent fraudulent COI issuance, evidencing tacit agreement to permit the practice.

203.  Each conspirator agreed to facilitate the RICO enterprise's fraudulent scheme and committed overt acts in furtherance thereof.

204.  Defalco suffered the following injuries directly caused by the RICO conspiracy:

a.  Past Deductible Payments: $1,247,000 in insurance deductibles paid for claims that should have been covered by the A2Z Policy (property injury);

b.  Future Premium Increases: $5,000,000 in increased insurance premiums, higher deductibles, and related costs over the next five years directly attributable to the fraudulently caused loss run damage (business injury);

c.  Lost Coastal Contract: $6,000,000 in lost profit from disqualification from the 1 South Flagler project (business injury);

d.  Loss of Self-Performance Capability: At least $2,500,000 representing the present value of lost profit margins on labor that Defalco must now subcontract rather than self-perform due to forced direct labor exclusions in its insurance policies (business injury);

e.  Risk Management Costs: At least $250,000 in costs to retain risk management firms to vet subcontractors, a service previously unnecessary (business injury);

f.  Additional quantifiable damages to be proven at trial.

g.  TOTAL: Not less than $15,000,000 in compensatory damages, to be trebled to $45,000,000 pursuant to 18 U.S.C. § 1964(c).

205.  Based on the foregoing, Defalco is entitled to recovery against Defendant on its claim for RICO conspiracy. 209. Pursuant to 18 U.S.C. § 1964(c), Defalco is entitled to trebled damages, attorneys' fees, and costs.

**WHEREFORE**, Defalco demands judgment against Defendant as follows:

(a)  An award of damages to be determined at trial;

(b)  An award of trebled damages, to be determined at trial;

33

(c)    An award of reasonable attorneys' fees and costs;

(d)    An award of pre-judgment and post-judgment interest and costs, as provided by law;

(e)    An award of consequential damages as provided by law; and

(f)    Such other relief as the Court may deem just and proper.

Dated:  February 9, 2026

**ANDERSON KILL P.C.**

By: */s/ Jason Kosek*
Jason Kosek
Keith A. Lazere
Salvatore A. Salerno
7 Times Square, 15th Floor
New York, New York 10036
Tel: (212) 278-1000
Fax: (212) 278-1733
jkosek@andersonkill.com

*Attorneys for Plaintiff*
 *Defalco Construction Inc.*

34

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 36 of 103 PageID #: 46

# EXHIBIT A

**Homesite**

PO Box 5316
Binghamton,NY13902

**Homesite Business Insurance Program**
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company
Tel: (833) 430-0186

A2Z Construction Services Inc
1003 Merrick Rd
Baldwin,NY 11510

**Policy Number:** CP00007397
**Date:** 12/07/2022

Dear A2Z Construction Services Inc

Homesite Business Insurance Program is pleased to be of service to you.  Our objective is to provide you with comprehensive and professional products for all of your insurance needs.

Please find the enclosed policy documents.

If you have any questions, please contact your agent or our Service Center at (833) 430-0186

Sincerely,

Customer Care Department

Policies are underwritten and issued by member companies and affiliates of Homesite Group Incorporated. Policies are underwritten by Midvale Indemnity Company (California Certificate of Authority Number 2224-4)

BID COVL 0001 12 17

FILED: KINGS COUNTY CLERK 02/09/2024 10:58 AM INDEX NO. 503864/2024
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 02/09/2024

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 38 of 103 PageID #: 48

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**



Homesite Business Insurance Program

**Send policy correspondence to:**
PO Box 5316
Binghamton,NY 13902
(833) 430-0186

Information as of: 12/10/2022

# POLICY DECLARATIONS

This document and your policy contract define our insuring agreement.  In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

**Named Insured:**     A2Z Construction Services Inc

**Policy Number:**     CP00007397

**E-mail Address:**    eranelad1@gmail.com
**Phone:**             2016228800

**Policy Type:**       Commercial General Liability
**Policy Period:**     12/10/2022 to 12/10/2023 12:01AM
                       Standard Time at Primary Location

## Location Information

### Location #1 (Primary location)

**Address:**           1003 Merrick Rd
                       Baldwin, NY 11510

## Policy Level Coverage (limits & deductibles shown are non-stackable across locations)

### General Liability

|  | Limit |
|---|---|
| Per Occurrence Limit | $1,000,000 |
| General Aggregate Limit (other than products/completed operations) | $2,000,000 |
| Products/Completed Operations Aggregate limit | $2,000,000 |
| Personal and Advertising Injury limit | $1,000,000 |
| Damage to Premises Rented to You (limit per premises) | $100,000 |
| Medical Payments (limit per person) | $5,000 |

|  | Deductible |
|---|---|
| Liability Property Damage Deductible | $500 |

BID CMP 1001 01 18                                          Page 1 of 3

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 39 of 103 PageID #: 49

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**General Liability Premium** REDACTED

## Classification Information

| Location | Class Code | Class Description | Exposure Basis | Exposure Amount |
|---|---|---|---|---|
| 1 | 92215 | Driveway, Parking Area or Sidewalk - paving or repaving | Payroll | $77,500 |

**Policy Premium** REDACTED

## Discounts Applied to This Policy

Full-Pay
Loss-Free

## Policy Forms and Endorsements

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 01 04 12 04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 07 11 | NEW YORK CHANGES - COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 21 01 11 85 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 50 04 13 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 70 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 21 86 12 04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 26 21 10 91 | NEW YORK CHANGES - TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP |
| CG 77 14 02 15 | ASBESTOS EXCLUSION |
| CG 77 24 02 15 | DAMAGE TO PROPERTY OF OTHERS ENDORSEMENT |
| CG 77 44 02 15 | MULTI-UNIT AND TRACT HOUSING RESIDENTIAL EXCLUSION |
| IL 00 23 07 02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 01 85 08 08 | NEW YORK CHANGES - CALCULATION OF PREMIUM |
| IL 02 68 01 14 | NEW YORK CHANGES - CANCELLATION AND NONRENEWAL |
| IL 09 85 01 15 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |

In witness whereof, we have caused this policy to be signed by our authorized officers.

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI  53783**

_____

**Tony Desantis, Jr.**
**President**

**David Holman**
**Secretary**

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
**12/07/2022**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME | Homesite Business Insurance Program | | |
|---|---|---|---|---|
| Homesite Business Insurance Program<br>PO Box 5316<br>Binghamton NY 13902 | PHONE (A/C, No, Ext) (833) 430-0186 | | FAX (A/C, No) | |
| | E-MAIL ADDRESS service@homesitebusinessinsurance.com | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A Midvale Indemnity Company | | | 27138 |
| INSURED | INSURER B | | | |
| A2Z Construction Services Inc<br>1003 Merrick Rd<br>Baldwin NY 11510 | INSURER C | | | |
| | INSURER D | | | |
| | INSURER E | | | |
| | INSURER F | | | |

**COVERAGES**      **CERTIFICATE NUMBER** 00000795762011      **REVISION NUMBER**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** | N | N | CP00007397 | 12/10/2022 | 12/10/2023 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | [X] POLICY [ ] PROJECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | **UMBRELLA LIAB** OCCUR | | | | | | EACH OCCURRENCE | |
| | **EXCESS LIAB** CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED RETENTION $ | | | | | | | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECU-TIVE OFFICER/MEMBER EXCLUDED?<br>**(Mandatory in NH)**<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE - EA | |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | |
| | **PROFESSIONAL LIABILITY** | | | | | | OCCURRENCE<br>AGGREGATE | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**
Paving and Asphalt Contracting

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| A2Z CONSTRUCTION SERVICES INC<br><br>1003 MERRICK RD<br>BALDWIN NY 11510 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**      The ACORD name and logo are registered marks of ACORD

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 42 of 103 PageID #: 52

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 43 of 103 PageID #: 53

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 44 of 103 PageID #: 54

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

FILED: KINGS COUNTY CLERK 02/09/2024 10:57 AM
NYSCEF DOC. NO. 2

INDEX NO. 503864/2024
RECEIVED NYSCEF: 02/09/2024

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 45 of 103 PageID #: 55

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012    CG 00 01 04 13

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 46 of 103 PageID #: 56

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 47 of 103 PageID #: 57

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 48 of 103 PageID #: 58

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

| CG 00 01 04 13 | © Insurance Services Office, Inc., 2012 | **Page 7 of 16** |

Case 1:26-cv-01251-SDE  Document 1-2  Filed 03/04/26  Page 49 of 103 PageID #: 59

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 50 of 103 PageID #: 60

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 51 of 103 PageID #: 61

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by;

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 52 of 103 PageID #: 62

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 53 of 103 PageID #: 63

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 54 of 103 PageID #: 64

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 55 of 103 PageID #: 65

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 56 of 103 PageID #: 66

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 57 of 103 PageID #: 67

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 58 of 103 PageID #: 68

COMMERCIAL GENERAL LIABILITY
CG 01 04 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **b.** of the **Premium Audit** Condition **Section IV** is replaced by the following:

**PREMIUM AUDIT**

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retro-spective premiums is the date shown as the due date on the bill. An audit to deter-mine the final premium due or to be re-funded will be completed within 180 days after the expiration date of the policy. But the audit may be waived if the total annual premium attributable to the auditable ex-posure base is not reasonably expected to exceed REDACTED If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**B.** Except as provided in Paragraph **A.** above, the **Examination Of Your Books And Records** Common Policy Condition continues to apply.

CG 01 04 12 04 © ISO Properties, Inc., 2003 **Page 1 of 1** ☐

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 59 of 103 PageID #: 69

COMMERCIAL GENERAL LIABILITY
CG 01 63 07 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section **I – Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

CG 01 63 07 11          © Insurance Services Office, Inc., 2010          **Page 1 of 3**    ☐

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 60 of 103 PageID #: 70

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of Section **I – Coverage B Personal And Advertising Injury Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**C.** The following is added as Paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV – Commercial General Liability Conditions**):

**e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** Paragraph **3.** of **Section IV – Commercial General Liability Conditions** is replaced by the following:

**3. Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no person or organization has a right under this Coverage Part:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" and "personal and advertising injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

**(1)** Brings an action to declare the rights of the parties under the policy; and

**(2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

© Insurance Services Office, Inc., 2010 CG 01 63 07 11

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM

NYSCEF DOC. NO. 2

INDEX NO. 703864/2026

RECEIVED NYSCEF: 02/09/2026

**E.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**F.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

**CG 01 63 07 11**                    © Insurance Services Office, Inc., 2010                    **Page 3 of 3**    ☐

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 62 of 103 PageID #: 72

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**Transfer of Duties When a Limit of Insurance Is Used Up.**

**a.** If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

   **(1)** General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

   **(2)** Products/Completed Operations Aggregate Limit;

   **(3)** Personal and Advertising Injury Limit;

   **(4)** Each Occurrence Limit; or

   **(5)** Fire Damage Limit

   is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

**b.** When a limit of insurance described in paragraph **a.** above has actually been used up in the payment of judgments or settlements:

   **(1)** We will notify the first Named Insured, in writing, as soon as practicable, that:

     **(a)** Such a limit has actually been used up; and

     **(b)** Our duty to defend "suits" seeking damages subject to that limit has also ended.

   **(2)** We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits".

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

   **(3)** The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**c.** The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph **b.(2)** above.

The duty of the first Named Insured to reimburse us will begin on:

   **(1)** The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph **a.** above; or

   **(2)** The date on which we sent notice in accordance with paragraph **b.(1)** above, if we did not send notice in accordance with paragraph a. above.

**d.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

**CG 26 21 10 91**　　　　Copyright, Insurance Services Office, Inc.,  1991　　　　**Page 1 of 1**　　☐

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 63 of 103 PageID #: 73

**IL 01 85 08 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

**A.** For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in Paragraph **B.,** the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**B.** For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

**1.** The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in Paragraph **2.** or **3.** apply.

**2.** The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

**a.** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

**b.** A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

**c.** A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

**3.** If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rate and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM INDEX NO. 703864/2026

NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 02/09/2026

IL 02 68 01 14

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **1.**, **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

**2. Cancellation Of Policies In Effect**

**a. 60 Days Or Less**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **A.2.b.** below.

**(2)** 15 days before the effective date of cancellation if we cancel for any of the reasons included in Paragraph **A.2.b.** below.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed below, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

**(4)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current policy period;

**(5)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, which results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

---

IL 02 68 01 14 © Insurance Services Office, Inc., 2013 **Page 1 of 5**

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 65 of 103 PageID #: 75

**(7)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(8)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Department of Financial Services, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Department of Financial Services.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium REDACTED of the total policy premium or REDACTED, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If one of the reasons for cancellation in Paragraph **A.2.b.** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C.** The following conditions are added:

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph **C.3.** below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to:

**a.** A change of limits;

**b.** A change in type of coverage;

**c.** A reduction of coverage;

**d.** An increased deductible;

**e.** An addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **C.3.** below.

**3. Notices Of Nonrenewal And Conditional Renewal**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraph **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

**(1)** And if notice is provided prior to the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60-day period, has replaced the coverage or elects to cancel;

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 66 of 103 PageID #: 76

**(2)** And if the notice is provided on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60-day period, unless Subparagraph **(2)** below applies; or

**(2)** Notwithstanding the provisions in Paragraphs **d.(1)** and **d.(2),** as of the renewal date of the policy if the conditional renewal notice was sent at least 30 days prior to the expiration or anniversary date of the policy.

**f.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D.** The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:

**1.** Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

**a.** The policy is issued or issued for delivery in New York State covering property located in this state; and

**b.** The policy insures:

**(1)** For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

**(2)** For loss of or damage to personal property other than farm personal property or business property; or

**(3)** Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

**c.** The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

**2.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

**a.** We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** But if this policy:

**(1)** Has been in effect for more than 60 days; or

**(2)** Is a renewal of a policy we issued;

we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

**(2)** Conviction of a crime arising out of acts increasing the risk of loss;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

**(4)** Discovery of willful or reckless acts or omissions increasing the risk of loss;

**(5)** Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

**(a)** Issued the policy; or

**(b)** Last voluntarily renewed the policy;

IL 02 68 01 14 © Insurance Services Office, Inc., 2013 **Page 3 of 5**

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 67 of 103 PageID #: 77

(6) The Superintendent of Financial Services' determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

(7) Required pursuant to a determination by the Superintendent of Financial Services that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

   a. **Conditional Continuation**

   Instead of cancelling this policy, we may continue it on the condition that:

   (1) The policy limits be changed; or

   (2) Any coverage not required by law be eliminated.

   If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

   b. **Nonrenewal**

   If, as allowed by the laws of New York State, we:

   (1) Do not renew this policy; or

   (2) Condition policy renewal upon:

      (a) Change of limits; or

      (b) Elimination of coverage;

   we will mail or deliver written notice of nonrenewal or conditional renewal:

      (a) At least 45 days; but

      (b) Not more than 60 days;

   before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the Farm Property – Other Farm Provisions Form – Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-arson Application in accordance with New York Department of Financial Services' Insurance Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in **E.1.** and **E.2.** above supersede any contrary provisions in this policy including this endorsement.

If the notice in **E.1.** or **E.2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs **f.** and **g.** of the **Mortgageholders** Condition are replaced by the following:

   f. **Cancellation**

   (1) If we cancel this policy, we will give written notice to the mortgageholder at least:

      (a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

      (b) 30 days before the effective date of cancellation if we cancel for any other reason.

© Insurance Services Office, Inc., 2013            IL 02 68 01 14

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 68 of 103 PageID #: 78

**(2)** If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

    **(a)** The effective date of cancellation of the insured's coverage; or

    **(b)** 10 days after we give notice to the mortgageholder.

**g. Nonrenewal**

**(1)** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**(2)** If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

    **(a)** The expiration date of the policy; or

    **(b)** 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability Coverage Part

Employment-Related Practices Liability Coverage Part

Farm Liability Coverage Form

Liquor Liability Coverage Part

Products/Completed Operations Liability Coverage Part

**1.** The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph **C.3.d.** above.

**2.** The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

---

IL 00 23 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

IL 00 23 07 02 © ISO Properties, Inc., 2001 **Page 1 of 2** ☐

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 70 of 103 PageID #: 80

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 23 07 02    □

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 71 of 103 PageID #: 81

POLICY NUMBER: CP00007397

**COMMERCIAL GENERAL LIABILITY**
**CG 03 00 01 96**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or   PER OCCURRENCE |
| Bodily Injury Liability | $ | $ 0 |
| OR | | |
| Property Damage Liability | $ | $ 500 |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96                    Copyright, Insurance Services Office, Inc., 1994                    **Page 1 of 2**    □

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 72 of 103 PageID #: 82

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

   **(1)** "Bodily injury";

   **(2)** "Property damage"; or

   **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

   **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

   **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Page 2 of 2          Copyright, Insurance Services Office, Inc., 1994          CG 03 00 01 96          ☐

FILED: QUEENS COUNTY CLERK 02/09/2024 10:57 AM INDEX NO. 703864/2024
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 02/09/2024

POLICY NUMBER: CP00007397                          **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Operations:**
All operations associated with A2Z Construction Services Inc

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

CG 21 01 11 85          Copyright, Insurance Services Office, Inc., 1984          **Page 1 of 1**          □

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM
NYSCEF DOC. NO. 2
INDEX NO. 503864/2026
RECEIVED NYSCEF: 02/09/2026

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 06 05 14              © Insurance Services Office, Inc., 2013              **Page 1 of 1**

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM

NYSCEF DOC. NO. 2

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 75 of 103 PageID #: 85

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 76 of 103 PageID #: 86

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license;

**(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

**CG 21 50 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 1**

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 78 of 103 PageID #: 88

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

CG 21 70 01 15 © Insurance Services Office, Inc., 2015 **Page 1 of 1**

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 79 of 103 PageID #: 89

**COMMERCIAL GENERAL LIABILITY**
**CG 21 86 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

CG 21 86 12 04                    © ISO Properties, Inc., 2003                    **Page 1 of 1**

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM
NYSCEF DOC. NO. 3
INDEX NO. 703864/2026
RECEIVED NYSCEF: 02/09/2026

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 02/09/2026

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 81 of 103 PageID #: 91

**COMMERCIAL GENERAL LIABILITY**
**CG 77 14 02 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

This insurance does not apply to:

1. Any "bodily injury" arising out of, resulting from, caused by, or contributed to in whole or in part by ingestion, inhalation or absorption of asbestos, exposure to asbestos, or the use of asbestos.

2. Any "property damage" arising out of, resulting from, caused by, or contributed to in whole or in part by asbestos, exposure to asbestos or the use of asbestos. "Property damage" also includes any claim for reduction in the value of real estate or personal property due to its contamination with asbestos in any form at any time.

3. Any "personal and advertising injury" arising out of, resulting from, caused by, or contributed to in whole or in part by ingestion, inhalation or absorption of asbestos, exposure to asbestos, or the use of asbestos.

4. Any loss, cost, or expense arising out of or in any way related to any request, demand, order, or statutory or regulatory requirement that any insured or others identify, sample, test for, detect, monitor, clean up, remove, contain, treat, detoxify, neutralize, abate, dispose of, mitigate, destroy, or any way respond to or assess the presence of, or the effects of, asbestos.

5. Any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority or any other responsible party or entity for damages resulting from identifying, sampling, testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of, mitigating, destroying, or in any way responding to asbestos or assessing the presence of, or effects of, asbestos.

6. Failure to detect the presence of or proportion of asbestos in a product, material, structure, or process.

7. The performance or failure to perform services of any kind in the identification, sampling, testing, detection, monitoring, cleaning up, removal, containment, treatment, detoxification, neutralization, abatement, disposal, mitigation, or destruction of a product, material, or process containing asbestos, whether by the "insured" or by anyone acting on the "insured's" behalf.

8. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above.

9. Any obligation to share damages or repay someone in connection with any of the subsections above.

**CG 77 14 02 15**

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 82 of 103 PageID #: 92

COMMERCIAL GENERAL LIABILITY
CG 77 24 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DAMAGE TO PROPERTY OF OTHERS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

| SCHEDULE | | |
|---|---|---|
| **COVERAGE** | **LIMITS OF INSURANCE** | **DEDUCTIBLE** |
| Property of others in the care, custody or control of the insured. | $ 2,500  Each Occurrence<br>$ 5,000  Aggregate | $250 Each Claim |

**A.** The exclusion in subparagraph **J.(4)** of Paragraph **2.** In exclusions of **Section I (COVERAGE A)** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is deleted. When this endorsement is attached to the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM,** coverage for property of others in the care, custody and control of the insured applies.

The property coverages available with this endorsement do not include coverage for:

**1.** "Property damage" to property held by you for servicing, repair, storage or sale at premises owned, rented, leased, operated or used by you;

**2.** Damage to property while in transit.

**B.** Following are two changes/additions to the **SECTION III – LIMITS OF INSURANCE** in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM:**

**8.** Subject to paragraph **2.** In **SECTION III – LIMITS OF INSURANCE** section of the COVERAGE FORM, the most we will pay because of all "property damage" to property in the care, custody or control of the insured is the Aggregate amount shown in the SCHEDULE above.

**9.** "Subject to paragraphs **5.** and **8.** in **Section III – LIMITS OF INSURANCE** section of the COVERAGE FORM, the most we will pay because of all property damage to property in the care, custody or control of the insured arising out of any one occurrence is the occurrence amount shown in the SCHEDULE above.

**C. DEDUCTIBLE**

**1.** Our obligation under this endorsement to pay damages on your behalf for property damage to property in the care, custody or control of

insured applies only to the amount of damages in excess of the deductible amount, stated in the SCHEDULE above. The limits of insurance applicable to Each Claim will be reduced by the deductible amount.

**2.** The terms of this insurance including those with respect to:

**a.** Our right and duty to defend any "suits" seeking those damages; and

**b.** Your duties in the event of an "occurrence."

Apply irrespective of the application of the deductible amount.

**3.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

**D. Other Insurance** – For coverage provided by this endorsement, **CONDITION 4.** Is deleted and replaced by the following.

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, then the insurance provided by this endorsement is excess. We will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**1.** The total amount that all such other insurance, would pay for the loss in the absence of this insurance; and

**2.** The total of all deductible and self-insured amounts under all that other insurance.

All other terms remain unchanged.

CG 77 24 02 15

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 83 of 103 PageID #: 93

CG 77 44 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MULTI-UNIT AND TRACT HOUSING RESIDENTIAL EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Multi-Unit and Tract Housing**

"Bodily injury", "property damage" or "personal and advertising injury liability" arising out of any "construction operations" whether ongoing operations or operations included within the products-completed operations hazard that involve a "housing tract" or "multi-unit residential building".

This exclusion does not apply to:

**a.** Remodeling, maintenance or repair performed for the "owner" of a detached single family dwelling provided that the work does not involve the repair or replacement of either "your work", or the work of any other insured under this policy, that was part of the original construction of the building; or

**b.** Your "construction operations" within the boundaries of what is or will become a public street or roadway or public right of way; or

**c.** Remodeling, maintenance or repair within the interior of an individual unit within a condominium, townhouse or cooperative building provided that the work is for the "owner" of the unit and does not involve the repair or replacement of either "your work", or the work of any other insured under this policy, that was part of the original construction of the building or conversion of an apartment building to a condominium, townhouse or cooperative building.

**d.** Maintenance or repair within the interior of an apartment building provided that the work does not involve the repair or replacement of either "your work", or the work of any other insured under this policy, that was part of the original construction of the building.

**B.** The following definitions are added to the **Definitions** Section:

"Construction operations" means pre-construction, construction, post-construction, reconstruction, renovation, remodeling, conversion of the building to a condominium, townhouse , cooperative building or any other type of multiple unit residential structure, maintenance or repair.

"Multi-unit residential building" means condominiums, townhouses, apartments, dormitories or similar structures that have more than four (4) units built or used for the purpose of residential occupancy, at the same location or complex, regardless of the number of buildings.

"Owner" means the person or persons that own the individual residential dwelling or unit but does not include a limited liability company, sole proprietor. partnership, joint venture, corporation, unincorporated association, trust, or the developer of the property or real estate manager or any entity related to either.

"Housing tract" means a residential development or subdivision consisting of more than eight (8) of any combination of dwelling units, detached single family dwellings , or lots all built, owned, or developed by the same or related general con-tractors, developers, persons, limited liability companies, partnerships, joint ventures, corporations, unincorporated associations or trusts. A development or subdivision built upon multiple tracts and/or built in multiple phases shall be considered to be one "housing tract".

CG 77 44 02 15

POLICY NUMBER: CP00007397

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)** $ REDAC |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| General Liability Coverage Part |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** REDAC **% Year: 20 22** |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** REDAC **% Year: 20 23** |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

FILED: QUEENS COUNTY CLERK 02/09/2026 10:57 AM
NYSCEF DOC. NO. 2

INDEX NO. 703864/2026
RECEIVED NYSCEF: 02/09/2026

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

IL 09 85 01 15

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 86 of 103 PageID #: 96



Homesite Business Insurance Program
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company

**Policy No:** CP00007397          **Payment Plan:**  Annual Pay

# CONFIRMATION OF ENROLLMENT IN AUTOMATIC PAYMENTS

Thank you for enrolling in our automatic payment plan for policy number: CP00007397. You have authorized Homesite Business Insurance Program to deduct payment from your checking or savings account, or to charge your credit or debit card. Your enrollment is complete and we will make payment deductions in the amounts and on the due dates indicated on your billing statement. Refer to your billing statement for a schedule of deductions and any applicable service charges. Note that changes to your policy or premium may change the amount debited. Your authorization shall apply to any renewal, reinstated, or amended policy with Homesite Business Insurance Program unless revoked by you. The charge will appear on your bank or credit card statement as "Midvale Indemnity Company". Note that Homesite Business Insurance Program has the right to discontinue your enrollment at any time. Refunds or credits, if any, may be made directly to your card or account. You can cancel your payment deductions by calling us at (833) 430-0186.


Thank you and we appreciate your business.

BID 0019 12 17

FILED: KINGS COUNTY CLERK 02/09/2024 10:57 AM INDEX NO. 503864/2024
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 02/09/2024

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 87 of 103 PageID #: 97

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**



Homesite Business Insurance Program

**Send policy correspondence to:**
PO Box 5316
Binghamton, NY 13902
(833) 430-0186

Information as of: 12/10/2022

# POLICY DECLARATIONS

This document and your policy contract define our insuring agreement. In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

| | |
|---|---|
| **Named Insured:** A2Z Construction Services Inc | **Policy Number:** CP00007397 |
| **E-mail Address:** eranelad1@gmail.com | **Policy Type:** Commercial General Liability |
| **Phone:** 2016228800 | **Policy Period:** 12/10/2022 to 12/10/2023 12:01AM Standard Time at Primary Location |

## Location Information

### Location #1 (Primary location)

**Address:**     1003 Merrick Rd
Baldwin, NY 11510

## Policy Level Coverage (limits & deductibles shown are non-stackable across locations)

### General Liability

| | Limit |
|---|---|
| Per Occurrence Limit | $1,000,000 |
| General Aggregate Limit (other than products/completed operations) | $2,000,000 |
| Products/Completed Operations Aggregate limit | $2,000,000 |
| Personal and Advertising Injury limit | $1,000,000 |
| Damage to Premises Rented to You (limit per premises) | $100,000 |
| Medical Payments (limit per person) | $5,000 |

| | Deductible |
|---|---|
| Liability Property Damage Deductible | $500 |

BID CMP 1001 01 18 Page 1 of 3

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 88 of 103 PageID #: 98

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**General Liability Premium**                                    REDACTED

## Classification Information

| Location | Class Code | Class Description | Exposure Basis | Exposure Amount |
|----------|-----------|-------------------|----------------|-----------------|
| 1 | 92215 | Driveway, Parking Area or Sidewalk - paving or repaving | Payroll | $77,500 |

**Policy Premium**                                              REDACTED

## Discounts Applied to This Policy

Full-Pay
Loss-Free

## Policy Forms and Endorsements

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 01 04 12 04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 07 11 | NEW YORK CHANGES - COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 21 01 11 85 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 50 04 13 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 70 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 21 86 12 04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 26 21 10 91 | NEW YORK CHANGES - TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP |
| CG 77 14 02 15 | ASBESTOS EXCLUSION |
| CG 77 24 02 15 | DAMAGE TO PROPERTY OF OTHERS ENDORSEMENT |
| CG 77 44 02 15 | MULTI-UNIT AND TRACT HOUSING RESIDENTIAL EXCLUSION |
| IL 00 23 07 02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 01 85 08 08 | NEW YORK CHANGES - CALCULATION OF PREMIUM |
| IL 02 68 01 14 | NEW YORK CHANGES - CANCELLATION AND NONRENEWAL |
| IL 09 85 01 15 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |

In witness whereof, we have caused this policy to be signed by our authorized officers.

BID CMP 1001 01 18                                                Page 2 of 3

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI  53783**

 

**Tony Desantis, Jr.**
**President**

**David Holman**
**Secretary**

# Homesite

PO Box 5316
Binghamton,NY13902

**Homesite Business Insurance Program**
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company
Tel: (833) 430-0186

A2Z Construction Services Inc
130 BULL RD
WASHINGTONVILLE,NY 10092

**Policy Number:** CP00007397
**Date:** 03/24/2023

Dear A2Z Construction Services Inc,

Homesite Business Insurance Program is pleased to be of service to you.  Our objective is to provide you with comprehensive and professional products for all of your insurance needs.

Please find the enclosed policy documents.

If you have any questions, please contact your agent or our Service Center at (833) 430-0186

Sincerely,

Customer Care Department

Policies are underwritten and issued by member companies and affiliates of Homesite Group Incorporated. Policies are underwritten by Midvale Indemnity Company (California Certificate of Authority Number 2224-4)

BID COVL 0001 12 17

FILED: QUEENS COUNTY CLERK 02/09/2024 10:57 AM  INDEX NO. 703864/2024
NYSCEF DOC. NO. 2  RECEIVED NYSCEF: 02/09/2024

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 91 of 103 PageID #: 101

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**



Homesite Business Insurance Program

**Send policy correspondence to:**
PO Box 5316
Binghamton,NY 13902
(833) 430-0186

Information as of: 12/10/2022

## POLICY DECLARATIONS

This document and your policy contract define our insuring agreement.  In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

**Named Insured:** A2Z Construction Services Inc

**Policy Number:** CP00007397

**E-mail Address:** eranelad1@gmail.com
**Phone:** 2016228800

**Policy Type:** Commercial General Liability
**Policy Period:** 12/10/2022 to 12/10/2023 12:01AM Standard Time at Primary Location

## Location Information

### Location #1 (Primary location)

**Address:** 1003 Merrick Rd
Baldwin, NY 11510

## Policy Level Coverage (limits & deductibles shown are non-stackable across locations)

### General Liability

| | Limit |
|---|---|
| Per Occurrence Limit | $1,000,000 |
| General Aggregate Limit (other than products/completed operations) | $2,000,000 |
| Products/Completed Operations Aggregate limit | $2,000,000 |
| Personal and Advertising Injury limit | $1,000,000 |
| Damage to Premises Rented to You (limit per premises) | $100,000 |
| Medical Payments (limit per person) | $5,000 |

| | Deductible |
|---|---|
| Liability Property Damage Deductible | $500 |

Case 1:26-cv-01251-SDE     Document 1-2     Filed 03/04/26     Page 92 of 103 PageID #: 102

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

| **General Liability Premium** | REDACTED |
|---|---|

## Classification Information

| Location | Class Code | Class Description | Exposure Basis | Exposure Amount |
|---|---|---|---|---|
| 1 | 92215 | Driveway, Parking Area or Sidewalk - paving or repaving | Payroll | $77,500 |

| **Policy Premium** | REDACTED |
|---|---|

## Discounts Applied to This Policy

Full-Pay
Loss-Free

## Policy Forms and Endorsements

| | |
|---|---|
| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 01 04 12 04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 07 11 | NEW YORK CHANGES - COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 21 01 11 85 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 50 04 13 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 70 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 21 86 12 04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 26 21 10 91 | NEW YORK CHANGES - TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP |
| CG 77 14 02 15 | ASBESTOS EXCLUSION |
| CG 77 24 02 15 | DAMAGE TO PROPERTY OF OTHERS ENDORSEMENT |
| CG 77 44 02 15 | MULTI-UNIT AND TRACT HOUSING RESIDENTIAL EXCLUSION |
| IL 00 23 07 02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 01 85 08 08 | NEW YORK CHANGES - CALCULATION OF PREMIUM |
| IL 02 68 01 14 | NEW YORK CHANGES - CANCELLATION AND NONRENEWAL |
| IL 09 85 01 15 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |

In witness whereof, we have caused this policy to be signed by our authorized officers.

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI  53783**

_____           _____

**Tony Desantis, Jr.**                          **David Holman**
**President**                                       **Secretary**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 03/24/2023 |

# CERTIFICATE OF LIABILITY INSURANCE

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME | Homesite Business Insurance Program | | |
|---|---|---|---|---|
| Homesite Business Insurance Program PO Box 5316 Binghamton NY 13902 | PHONE (A/C, No, Ext) (833) 430-0186 | | FAX (A/C, No) | |
| | E-MAIL ADDRESS service@homesitebusinessinsurance.com | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A Midvale Indemnity Company | | | 27138 |
| INSURED A2Z Construction Services Inc 130 BULL RD WASHINGTONVILLE NY 10092 | INSURER B | | | |
| | INSURER C | | | |
| | INSURER D | | | |
| | INSURER E | | | |
| | INSURER F | | | |

## COVERAGES CERTIFICATE NUMBER 00003124284160 REVISION NUMBER

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | N | N | CP00007397 | 12/10/2022 | 12/10/2023 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | X POLICY PRO-JECT LOC OTHER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY(Per accident) | |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | UMBRELLA LIAB OCCUR | | | | | | EACH OCCURRENCE | |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | |
| | DED RETENTION $ | | | | | | | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECU-TIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTH-ER E L. EACH ACCIDENT E L. DISEASE - EA E L. DISEASE - POLICY LIMIT | |
| | PROFESSIONAL LIABILITY | | | | | | OCCURRENCE AGGREGATE | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Paving and Asphalt Contracting

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| A2Z CONSTRUCTION SERVICES INC 130 BULL RD WASHINGTONVILLE NY 10092 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03) The ACORD name and logo are registered marks of ACORD

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 95 of 103 PageID #: 105

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**



Homesite Business Insurance Program

**Send policy correspondence to:**
PO Box 5316
Binghamton,NY 13902
(833) 430-0186

Information as of: 03/31/2023

# POLICY DECLARATIONS

This document and your policy contract define our insuring agreement.  In return for payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.

## Policy Information

| | |
|---|---|
| **Named Insured:** | A2Z Construction Services Inc |
| **Policy Number:** | CP00007397 |
| **E-mail Address:** | eranelad1@gmail.com |
| **Phone:** | 2016228800 |
| **Policy Type:** | Commercial General Liability |
| **Policy Period:** | 12/10/2022 to 12/10/2023 12:01AM Standard Time at Primary Location |

## Location Information

### Location #1 (Primary location)

**Address:** 1003 Merrick Rd
Baldwin, NY 11510

## Policy Level Coverage (limits & deductibles shown are non-stackable across locations)

### General Liability

| | Limit |
|---|---|
| Per Occurrence Limit | $1,000,000 |
| General Aggregate Limit (other than products/completed operations) | $2,000,000 |
| Products/Completed Operations Aggregate limit | $2,000,000 |
| Personal and Advertising Injury limit | $1,000,000 |
| Damage to Premises Rented to You (limit per premises) | $100,000 |
| Medical Payments (limit per person) | $5,000 |

| | Deductible |
|---|---|
| Liability Property Damage Deductible | $500 |

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 96 of 103 PageID #: 106

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

---

| **General Liability Premium** | REDACTED |
|---|---|

## Classification Information

| Location | Class Code | Class Description | Exposure Basis | Exposure Amount |
|---|---|---|---|---|
| 1 | 92215 | Driveway, Parking Area or Sidewalk - paving or repaving | Payroll | $77,500 |

---

| **Policy Premium** | REDACTED |
|---|---|

## Discounts Applied to This Policy

Full-Pay
Loss-Free

## Policy Forms and Endorsements

| CG 00 01 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
|---|---|
| CG 01 04 12 04 | NEW YORK CHANGES - PREMIUM AUDIT |
| CG 01 63 07 11 | NEW YORK CHANGES - COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG 21 01 11 85 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG 21 06 05 14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 50 04 13 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 70 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG 21 86 12 04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG 24 26 04 13 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG 26 21 10 91 | NEW YORK CHANGES - TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP |
| CG 77 14 02 15 | ASBESTOS EXCLUSION |
| CG 77 24 02 15 | DAMAGE TO PROPERTY OF OTHERS ENDORSEMENT |
| CG 77 44 02 15 | MULTI-UNIT AND TRACT HOUSING RESIDENTIAL EXCLUSION |
| IL 00 23 07 02 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 01 85 08 08 | NEW YORK CHANGES - CALCULATION OF PREMIUM |
| IL 02 68 01 14 | NEW YORK CHANGES - CANCELLATION AND NONRENEWAL |
| IL 09 85 01 15 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |

In witness whereof, we have caused this policy to be signed by our authorized officers.

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 97 of 103 PageID #: 107

**Underwritten By: Midvale Indemnity Company**
**A Wisconsin Stock Company**
**Home Office: 6000 American Parkway, Madison, WI 53783**

**Home Office**
**MIDVALE INDEMNITY COMPANY**
**6000 American Parkway**
**Madison, WI  53783**

**Tony Desantis, Jr.**
**President**

**David Holman**
**Secretary**

Case 1:26-cv-01251-SDE   Document 1-2   Filed 03/04/26   Page 98 of 103 PageID #: 108

# Homesite

PO Box 5316
Binghamton,NY13902

**Victor Insurance Managers LLC**
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company
Tel: (833) 430-0186

A2Z Construction Services Inc
130 BULL RD
Washingtonville,NY 10992

**Policy Number:** CP00007397
**Date:** 05/30/2023

Dear A2Z Construction Services Inc,

Victor Insurance Managers LLC is pleased to be of service to you.  Our objective is to provide you with comprehensive and professional products for all of your insurance needs.

Please find the enclosed policy documents.

If you have any questions, please contact your agent or our Service Center at (833) 430-0186

Sincerely,

Customer Care Department

Policies are underwritten and issued by member companies and affiliates of Homesite Group Incorporated. Policies are underwritten by Midvale Indemnity Company (California Certificate of Authority Number 2224-4)

BID COVL 0001 12 17

FILED: QUEENS COUNTY CLERK 02/09/2024 10:57 AM
NYSCEF DOC. NO. 2

INDEX NO. 703864/2024
RECEIVED NYSCEF: 02/09/2024

Case 1:26-cv-01251-SDE    Document 1-2    Filed 03/04/26    Page 99 of 103 PageID #: 109



Victor Insurance Managers LLC
Underwritten by: Midvale Indemnity Company
A Wisconsin Stock Company

PO Box 5316
Binghamton,NY 13902
(833) 430-0186

**Date:** 05/30/2023

## NOTICE OF CANCELLATION

**Important Notice for:**   A2Z Construction Services Inc
**Email contact:**   eranelad1@gmail.com

| Policy Number | Policy Type | Policy Period | Insurance Carrier |
|---|---|---|---|
| CP00007397 | Commercial General Liability | 12/10/2022 to 12/10/2023 | Midvale Indemnity Company |

| Effective Date/Time of Cancellation | Policy Balance | Minimum Due | Due Date |
|---|---|---|---|
| 12:01am on 05/08/2023 | $0.00 | $0.00 | - |

Per your request, this notice serves as confirmation that your insurance coverage will terminate at and from the hour and date shown above in the time zone of your primary location.

If you have any questions, please call (833) 430-0186, or email us at service@homesitebusinessinsurance.com.

You, your agent or your broker may request loss information.  We will provide loss information for 5 years or the time period coverage has been written, whichever is less.

Thank you, and we appreciate your business.

BID 0002 12 17

Case 1:26-cv-01251-SDE Document 1-2 Filed 03/04/26 Page 100 of 103 PageID #: 110

# EXHIBIT B

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
1/18/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER Acrisure LLC d/b/a Traza Insurance Agency 2001 Marcus Avenue Suite W180 Lake Success NY 11042 | CONTACT NAME: Gaetano Causi | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): 516-358-3500 | | FAX (A/C, No): 516-358-3540 |
| | E-MAIL ADDRESS: csr@trazains.com | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | INSURER A : Midvale Indemnity Company | | 27138 |
| INSURED A2ZCONS-01 A2Z Construction Services Inc 130 Bull Road, Washingtonville NY 10992 | INSURER B : Guard Insurance Group | | |
| | INSURER C : ShelterPoint Life | | 81434 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES CERTIFICATE NUMBER: 1199428175 REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE X OCCUR X Contractual Liab | Y | Y | CP00007397 | 12/10/2022 | 12/10/2023 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY ☐ PRO-JECT ☐ LOC OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE ☐ DED ☐ RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N: Y N/A (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | Y | ATWC367276 | 12/10/2022 | 12/10/2023 | X PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | Disability | | | D653468 | 12/10/2021 | 12/10/2031 | Statutory | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Job Location: 103 Grand Street, Brooklyn NY 11249

Defalco Construction Inc is named as an additional insured with respect to general liability.
GL is primary & noncontributory for operations of the named insured(s) and contains a waiver of subrogation in favor of the additional insureds.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Defalco Construction Inc 148-14 Liberty Ave Jamaica NY 11435 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE *[signature]* |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01) The ACORD name and logo are registered marks of ACORD

Case 1:26-cv-01251-SDE     Document 1-2     Filed 03/04/26     Page 102 of 103 PageID #:
112

# EXHIBIT C

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD®**

DATE (MM/DD/YYYY) 2/1/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gaetano Causi |
|---|---|
| Acrisure LLC d/b/a Traza Insurance Agency<br>2001 Marcus Avenue Suite W180<br>Lake Success NY 11042 | PHONE (A/C, No, Ext): 516-358-3500  FAX (A/C, No): 516-358-3540<br>E-MAIL ADDRESS: csr@trazains.com |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED<br>A2Z Construction Services Inc<br>130 Bull Road,<br>Washingtonville NY 10992 | INSURER A : Midvale Indemnity Company | 27138 |
| A2ZCONS-01 | INSURER B : Guard Insurance Group | |
| | INSURER C : ShelterPoint Life | 81434 |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES  CERTIFICATE NUMBER:  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR<br>X Contractual Liab | Y | Y | CP00007397 | 12/10/2022 | 12/10/2023 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY  PRO-JECT  LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS  SCHEDULED AUTOS<br>HIRED AUTOS  NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB  OCCUR<br>EXCESS LIAB  CLAIMS-MADE<br>DED  RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | ATWC367276 | 12/10/2022 | 12/10/2023 | X PER STATUTE  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | Disability | Y | N | D653468 | 12/10/2022 | 12/10/2023 | Statutory | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Defalco Construction Inc., 148-14 Liberty Ave, Jamaica, NY 11435 is named as an additional insured.

Job location: 320-350 Kent Ave.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Defalco Construction Inc<br>148-14 Liberty Ave<br>Jamaica NY 11435<br>United States | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)  The ACORD name and logo are registered marks of ACORD