UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEFALCO CONSTRUCTION INC., Plaintiff, | **Docket#** 26-cv-01251-SDE |
| - versus - | U.S. Courthouse Brooklyn, New York |
| ACRISURE, LLC, Defendant | April 20, 2026 2:31 p.m. |

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE SETH D. EICHENHOLTZ
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**

**For the Plaintiff:** **Jason E. Kosek, Esq.**
Anderson Kill & Olick, P.C.
7 Times Square, 15th Floor
New York, NY 10036

**For the Defendant:** **Daniel Robertson, Esq.**
**William E. Vita, Esq.**
Shook, Hardy & Bacon LLP
1 Rockefeller Plaza, Ste. 2801
New York, NY 10020

**Transcription Service:** **Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE CLERK: Today is Monday, April 20, 2026 at 2:31 p.m.

Civil Cause for a Pre-motion conference on the matter of *Defalco Construction v. Acrisure*, docket 26-cv-1251.

Parties, state your appearances for the record starting with plaintiff.

MR. KOSEK: Jason Kosek from Anderson Kill, 7 Times Square, 15th floor, New York, New York 10036.

THE COURT: Good afternoon, Mr. Kozek.

MR. KOSEK: Good afternoon, sir.

MR. ROBERTSON: Daniel Robertson on behalf of defendant Acrisure LLC; Shook, Hardy & Bacon, 1 Rockefeller Plaza, New York, New York.

THE COURT: Good afternoon, Mr. Robertson.

MR. VITA: And also for the defendant Acrisure, William Vita of the same law firm and same address as Mr. Robertson.

THE COURT: Good afternoon to you too, Mr. Vita.

All right. We are here on a pre-motion conference because defendants have sought to dismiss plaintiff's claims. Plaintiff brings RICO conspiracy and a bunch of contract and negligence related claims under New York State law.

I've read the parties' pre-motion conference letter. I thought there was enough for us to talk through the motion a little bit and see where that leads us.

But before I do that, let me just here from you, Mr. Kozek, if you just want to give a brief overview of the motion. Sorry, not Mr. Kozek. Mr. Robertson, Mr. Vita, give a brief overview of the motion and then I have some questions for Mr. Kozek.

MR. ROBERTSON: Certainly. Just by way of background on the facts, Acrisure is an insurance broker.

THE COURT: Yes.

MR. ROBERTSON: It has previously in the past served as an insurance broker for plaintiff Defalco Insurance. It did not serve as Defalco's insurance broker with respect to this transaction.

THE COURT: Okay. It did not.

MR. ROBERTSON: It did not.

THE COURT: Okay.

MR. ROBERTSON: The customer that was at issue here is one of Defalco's co-parties, A to Z Construction. A to Z Construction procured an insurance policy through Acrisure. And according to the construction agreement between Defalco and A to Z, Defalco was supposed to be named as an additional insured on that policy. For

reasons unknown, that did not occur. The policy that A to Z obtained did not have additional insurance coverage which is something of an oddity in the industry.

THE COURT: So can I just pause you there because I want to make sure I have this clear.

So it was supposed to have the additional insured coverage, right? You were or were not the company that was supposedly procuring the policy?

MR. ROBERTSON: Acrisure was assisting in placing the policy in identifying an insurance company that could find that coverage.

THE COURT: Okay. Right. As a broker.

MR. ROBERTSON: Correct.

THE COURT: Okay. And so is it known whether in that capacity Acrisure communicated the desire or the necessity or whatever it was of the additional insured requirement?

MR. ROBERTSON: I'm not entirely positive about whether A to Z Construction actually requested additional insured coverage or --

THE COURT: Right. So right, so that's my question. You get it?

MR. ROBERTSON: Yes.

THE COURT: Yes.

MR. ROBERTSON: Yes. No, it could have been

the case that A to Z intentionally selected a policy without that additional insured coverage simply because it was less expensive? We don't know. But whether they did or whether they didn't, the policy stated what it stated. It does not include additional insured coverage.

THE COURT: But I guess what I'm asking is is it possible on the facts generally, you know, undisputed between the parties that Acrisure did know that hey, we want to see a list of policies that would provide additional insured coverage to Defalco and Acrisure said sure, these policies all do it. This is my understanding of plaintiff's claims. And then they selected one and then at the end of the day everyone said oops, once they were in the policy, oops actually it doesn't have it and that A to Z may point to Acrisure and saying the reason we thought we had it, but they were our broker and they said that it would, and then it turns out that they didn't. Is that a possible plausible scenario under these facts?

MR. ROBERTSON: On one level, yes. But there's a distinction that needs to be made there.

THE COURT: Of course.

MR. ROBERTSON: Because under the law, New York law recognizes a duty on behalf of an insurance broker only in very limited circumstances. It only owes a duty

to its client in the transaction. And beyond that, it only owes a duty to procure the coverage that the client requests. Beyond that, there is no duty that an insurance broker owes either to his client or to any third party including Defalco. And there's numerous New York cases where people have been named as additional insureds or have failed to have been named as additional insureds --

THE COURT: Right.

MR. ROBERTSON: -- on an insurance policy even those where they've dealt with the insurance broker in the past on other policies, courts find there's no duty.

THE COURT: Which is why I guess I'm trying to be clear. I see, Mr. Kozek, you're getting ready to -- one second, Mr. Kozek.

MR. KOSEK: I'm not interrupting, I'm --

THE COURT: Okay. Yes.

MR. KOSEK: Sorry.

THE COURT: I'm just trying to be clear. Is it possible I guess the scenario where, you know -- and again, I'm not suggesting this means there's a RICO claim here. I'm just saying whether there's any claim to begin with and then I'll drill down on some other questions. Is it a plausible scenario that A to Z did request that there was the duty on behalf of Acrisure to provide them

with insurance options that were provided and it was Acrisure that failed to do that because they -- I don't know why. You know, oops we forgot about it, or whatever the case. Is that -- and discovery may establish whether this happens but is that something that we can rule out or is that a possibility here?

MR. ROBERTSON: It's certainly a possibility --

THE COURT: Okay.

MR. ROBERTSON: -- that A to Z expressly requested the kind of policy that would have covered Defalco.

THE COURT: Okay.

MR. ROBERTSON: That's entirely possible. But back claim would be between A to Z and Acrisure.

THE COURT: Okay.

MR. ROBERTSON: That's not a claim that Defalco can bring against Acrisure. And for purposes of these claims and this motion specifically, even assuming that those are the facts, it does not change the motion.

THE COURT: I get it because it is A to Z that asked for something specific and didn't get it. The fact that Defalco is claiming they were injured by it, where that would be a problem in terms of the duty issue on the law is Acrisure did not owe a duty to Defalco because you were the broker of A to Z. That's the argument?

MR. ROBERTSON: Correct.

THE COURT: Okay.

MR. ROBERTSON: That's exactly what the cases state. And to the extent that anyone owed a duty to Defalco, that was A to Z under their own contract.

THE COURT: Okay. Understood.

MR. KOSEK: Can I briefly respond?

THE COURT: Yes. Let me just finish.

MR. KOSEK: No problem.

THE COURT: Okay. And I'll come back to you, Mr. Robertson, so I don't want you to feel like if we don't go through some of these things I'm not going to be able to.

Now, who provided this certificate of insurance that incorrectly said that there was insurance covering Defalco?

MR. ROBERTSON: That was an employee of Acrisure. His name is Gaetano Causi.

THE COURT: And is there no cognizable claim under New York State law if that came -- I understand plaintiff is claiming it was intentional, but let's assume it was negligent. Are you saying that that's not a -- that document, which led Defalco to rely on the fact that there was coverage, that there is no claim under New York State law for that negligence?

MR. ROBERTSON: Yes. There is extensive law that the precise language that's stated in this certificate of insurance categorically bars clients for fraud and for negligent misrepresentation.

THE COURT: Okay. But there's no -- I guess that's not my question. My question is but there is no law under any negligence theory that their reliance on a negligently produced certificate of insurance, not one that was intentionally fraudulent, but one where you all just said oh we're not even going to check. We're just going to let them believe that they were additional insured on this policy, that there is no -- and it may be. I'm not -- don't take for my tone that it can't be. But there is no theory under which you're liable to Defalco who relied on that negligently produced certificate of insurance.

MR. ROBERTSON: Yeah, that's correct. And that's because of the way New York law limits the duties of an insurance broker to writing only to its clients and only to procure the specific coverage that the client requested.

THE COURT: Okay.

MR. ROBERTSON: Those are the only duties (indiscernible) negligence.

THE COURT: I will circle back with you on RICO

if needed after I speak with Mr. Kozek because I have a lot of questions for him about this RICO claim.

So let me go -- Mr. Kozek is really itching to talk with me and so I want to give him that opportunity. Mr. Kozek, I'll let you present whatever you want to present about that and then I have some questions.

MR. KOSEK: Fundamentally there are some statements there. On the same projects Mr. Causi was placing Defalco's insurance for those same projects and Defalco is the one that brought A to Z to get the policy through Mr. Causi. Defalco gave Mr. Causi the contract and said you need to give us -- this is the policy you need to get for A to Z. Defalco is the one that handed it over to them.

THE COURT: Okay. So let me pause you there for a second because again, I just want to make sure I got it.

Your agreement with them that for this particular transaction, Defalco's insurance was not acquired through the broker but that you're saying where the duty arises is as Acrisure was working on behalf of A to Z, Defalco said hey, folks at Acrisure who we know because we have this relationship with you, here is the contract and clearly we need to be named as an additional insured. And so you're insured. So your argument is

that creates the duty, that opens the door for the right of action directly from Defalco to Acrisure.

MR. KOSEK: That superior knowledge is a common way around the law that Mr. Robertson mentioned. And I want to make sure it's clear that for Defalco's own insurance policy for the same projects Mr. Causi placed those insurance policies for Defalco. It's not like someone they just knew and referred him. This was on the same project they were working together and Acrisure placed Defalco's policy for the project and placed A to Z's policy for the project.

And you know, there were some mistaken, there was mistakes, but if you look at the policy, and it's attached to the complaint, the COI has very clearly the letter N for additional insured. And you can tell it was deleted and you can tell that it's the typewriter from Adobe PDF.

THE COURT: I saw it. It's in your complaint, right? So I looked at what's in your complaint. I don't think that the Court can at the motion to dismiss stage, right, reach that issue. I just don't. And that's one of the reasons why I'm thinking -- you know, unless of course it's completely implausible. But that's one of the reasons why I'm thinking about like does it matter? Are there theories under which you're liable and is this

motion to dismiss basically deciding which of those theories can proceed if at all? Their argument would be there are no theories under which you're liable. You heard me talk about that.

And you know, this is why I want to talk to you about your RICO claims. So the agreement is, you know, the company was not a broker for Defalco for this project but had a relationship --

MR. KOSEK: It was the broker for Defalco for the project also. It was a broker for Defalco for this project and also the broker for A to Z for the same project.

THE COURT: Okay. But they're telling me that's not true. Did I misunderstand, Mr. Robertson?

MR. ROBERTSON: Well, project? Project is not a relevant inquiry under the case law. What's relevant is who's the customer and who was requesting the insurance policy?

THE COURT: Right. Okay. So I just want to make sure I'm clear about that. I assume, and you can correct me if I'm wrong because you're all more steeped in this than I am, I assume that both -- even though they're an additional insured on A to Z's policy, Defalco needs to have its own insurance policy for the same project.

My understanding of Defalco's argument is that part of the reason there exists a duty is because Acrisure was basically acting as the broker for everything related to this project for these two companies and as such had information that had it understand the criticality. And again, this may not be successful. That's why I'll read your papers.

But I'm just saying, you know, had all this information, this criticality, and owed a duty because in addition to buying the policy for A to Z, they were also arranging for the policies for everyone involved in that project. I understand what you're telling me that's not the way the law looks at this and that makes sense to me. The customers for the policy. I get what you're saying.

But what I hear them saying is in terms of the relationship to both companies and the relationship for both parties, they're going to argue that that provided Acrisure with information that allows them to have a greater I guess amount of liability towards Defalco even though Defalco wasn't the purchaser of the insurance policy where there was --

MR. KOSEK: Acrisure was giving the COI directly to Defalco.

THE COURT: Right.

MR. KOSEK: So Acrisure knew what the policy

said because they had the policy. They knew the policy did not provide for additional insured. And as you read our paper, our claim and argument is that they intentionally changed it to hide the fact they did not procure the correct insurance.

But once they gave that document, they gave the document to Defalco on numerous occasions intending for Defalco to rely on the document because then Defalco then has to give that same document to the (indiscernible) contract with, the owner, the GC.

So Defalco then was roped into this whole what we're claiming is a fraud and is giving out a fraudulent COI to owners, general contractors, because they are supposed to be named as additional insured under the same policy. So all that comes from the fact that -- I think you summarized it perfectly that for these two parties, Defalco and A to Z, Acrisure was handling all of the insurance issues for both of them as it relates to this project.

THE COURT: So let me ask you a question. Do you need that intentionality that you're arguing under your legal theory to recover? So let's say, let's put out the hypo that I put out right at the beginning to defendant. If it was purely no fault of Acrisure except for the fact that when they've printed out that COI that

went to your client they let's say negligently wrote that they were an additional insured. Does that mean that -- are you able to recover from them or is the only person who can recover for that negligence A to Z? You know, that's kind of their argument. What I'm saying I guess to summarize it is do you need that intentionality or can you proceed just on negligence by the fact that they generated a negligent certificate of insurance?

MR. KOSEK: Certainly we have a negligence claim, a negligent misrepresentation claim. We also have fraud claims which I think makes --

THE COURT: What about the fact that as they pointed out to me numerous times the COI and the terms of the insurance specifically say you cannot bring negligent misrepresentation claims because of the seal?

MR. KOSEK: That's not what the disclaimer says. And there's case law that says is that you are not entitled to rely on a general disclaimer when there's fraud. That's the case law in the Second Circuit that when there's fraud that a general disclaimer is -- and that disclaimer is so --

THE COURT: You do need the intentionality for --

MR. KOSEK: For parts of it but that, the disclaimer applies to the insurance company so that I

can't sue Midvale Insurance Company, the insurance company on the COI for coverage, because the COI says it's supposed to give me coverage but it doesn't. That's what the disclaimer is for. The disclaimer is not to protect them from fraud. That would be absurd, that would be an absurd position. It's to protect the insurance company. So Defalco can't sue Midvale Insurance Company and say look, this says I'm an additional insured. You have to go outside, despite the fact your policy doesn't give me additional insured coverage, you have to give it to me. That's what the disclaimer is for. It's not for this because any other reading of the case law would allow any insurance broker to just give out fraudulent documents and with no repercussion. That's clearly not what's intended.

THE COURT: Okay. Let's put a pin in that for a second. Let's talk about your RICO claim. Because of everything that's going on here, I will be candid with you, I am extremely skeptical of your RICO claim.

So let's start with who is the enterprise? Who are they conspiring with?

MR. KOSEK: Each other to protective the fraud. They were distinct employees within Acrisure. There are four named in the complaint; Gaetano Causi, Frank Caramante. I forget the first name for Weber, and Amanda

Nunez. They all saw the fraudulent COI. They got the letters from Midvale Insurance Company saying there's no AI coverage and they hid that from Defalco. They never told Defalco that. They continued and allowed Defalco to go around and say they had coverage when they never did. And they hid that fraudulent -- they did that in order to continue their fraud. They were protecting their fraud through RICO.

THE COURT: I get it, I get it. You know, and defendants point this out in their letter. The Second Circuit, and you know, particularly the case of *Cruz v. FX Direct Dealer LLC*, 720 F.3d 115 (2d Cir. 2013). The quote from that decision is "The Second Circuit has long since rejected the idea that a RICO enterprise may consist merely of a corporate defendant associated with its own employees and agents carrying on the regular affairs of the defendant." And that's exactly what you're arguing. Like they would acquire this insurance, they realized they screwed up so they conspired with each other to cover it up.

MR. KOSEK: That's not -- it's fraudulent, it's providing fraudulent COIs in their ordinary course of business.

THE COURT: Well providing a COI --

MR. KOSEK: No, but a fraudulent one is not --

that's the distinction here that if they would have been given a COI that was incorrect, that's different. We claim it's fraud. And I think that once you do an analysis of the policy and the COI that was provided through discovery and allowing a deposition of Mr. Causi to go forward, I will get the admission on the record showing that it was done intentionally.

And I don't think my colleagues here would say that fraud is their ordinary course of business. I mean I would --

THE COURT: I will get to you, Mr. Robertson, I promise.

MR. ROBERTSON: Okay.

THE COURT: All right. So I hear you, I hear you. Let me ask you as a practical matter what does the RICO claim get you? You have diversity here, right?

MR. KOSEK: No, we don't have diversity. It's a federal question. They're doing business as Traza Insurance Company at the time which is a New York entity which is why we originally brought the claim in New York state court.

THE COURT: Okay.

MR. KOSEK: And then they removed on the last day for an answer they removed to federal court which they have a right to do because there's a federal

question which we're not arguing about that. We're here, fine.

But in our opinion Traza, they were doing business as Traza Insurance Company which is a New York entity. So I don't think there is diversity jurisdiction here from what we know of the parties.

THE COURT: Okay. So you think that if the Court were to say no RICO, then you're out of federal court?

MR. KOSEK: That would be our position, your Honor.

THE COURT: Mr. Robertson, my reading your letter --

MR. ROBERTSON: Yes.

THE COURT: -- makes it seem like you take a different position so --

MR. ROBERTSON: We do, we do.

THE COURT: Okay. Yes, yes.

MR. ROBERTSON: We do. I understand that he says that they were doing business in New York as Traza Insurance Company. The caption reads Acrisure LLC d/b/a Traza Insurance. D/b/a or a trade name in New York is nothing. You cannot sue a trade name. It is not an entity.

The question is what is the residence or

citizenship of Acrisure? And Acrisure is a Michigan company. So we have diversity jurisdiction here.

THE COURT: Okay.

MR. KOSEK: They maintain an office in New York State. That's where Mr. Causi worked. He worked in an office in New York State. Then we think that is enough there to be -- because when you look at the COI, it has Traza. It doesn't say Acrisure, it says Traza on there. But when you go and do analysis of what Traza is now, that's why we pled in Acrisure.

There is a question as to whether Traza Insurance Company confers jurisdiction in New York. So that's why, because we don't know the answer to these questions pre-discovery, we filed in New York State so we wouldn't get removed on the fact that there was no diversity. We were trying to be as safe as possible. And they removed to federal and we're, you know, we're here.

THE COURT: Yes. Well, I mean it's kind of like when I take a Delta flight to a small city and it's really not Delta, it's Republic Airways. That's a d/b/a, right? I mean that doesn't mean that I'm -- I mean they make it look a lot like I'm really flying Delta, but what's the legal impact of that? I think it's still Republic Airways that is -- I don't know, maybe I'm --

MR. KOSEK: But they were doing business as Traza. The email is Traza Insurance. It wasn't like it was G. Causi at Acrisure. And that would be more akin to what you're saying.

But here they had their email addresses, everything, the COIs, everything says Traza Insurance which is a New York entity.

THE COURT: If I were to -- if the Court were to agree with the defendants that the RICO claims weren't liable but that some of the New York State claims were, you would argue in furtherance of your motion or after that motion that it should be remanded even if defendants are taking the position that there's diversity?

MR. KOSEK: I don't know the answer to that right now. I think we have to -- I mean there are facts that we don't know and that could change. I don't want to tell you something and, you know, we're on the record here. I don't want to --

THE COURT: But based on what you know now, you would argue --

MR. KOSEK: Yes.

THE COURT: -- that it should be --

MR. KOSEK: Yes, your Honor. I think that based on what we know now, the very limited facts as to the corporate structure how they're doing business and

the way, you know, the way the Google search pulls up and a New York State corporate search pulls up, it leads me to believe one way. But I can obviously be convinced that facts are different like --

THE COURT: I hear you. All right. Mr. Robertson, your turn.

MR. ROBERTSON: Very, very briefly on the --

THE COURT: Yes, yes.

MR. ROBERTSON: -- on the citizenship issue. Traza Insurance is not an incorporated entity of New York State. And whether or not it has an office in New York, the question is for citizenship purposes, what is the principal place of business of the defendant? Acrisure is headquartered in Michigan. It's a billion-dollar company, one of the largest insurance companies in the world. And New York is not its principal place of business and it's incorporated in Michigan. So it would be our position that diversity would be satisfied here.

THE COURT: Okay. All right. And that's a pretty, to me that was a pretty threshold issue and I'll explain why. It's because if the parties agreed that there would be diversity jurisdiction without the RICO claim, then I would say to you, Mr. Kosek, like (A), does the RICO claim really get you enough that you want to, you know, fight this out? Or do you see that maybe

there's an opportunity to move past the motion, let me finish, without the RICO claim?

And to defendants, I would say, you know, unless I believe all the New York State claims are going to go away, which I'm not 100 percent sure about that right now, then it's really a matter of what we'll be considering here since I know jurisdiction may be contested in the event that there is not a RICO claim that changes the analysis a little bit, which is fair. So you know, we'll see where that takes us.

But I do think some of these issues, and you've both done a great job of presenting and I'll listen to more. I'm not trying to cut this off. But these are certainly things where I'll need to hear from the parties in full briefing before making a final decision.

So Mr. Robertson, you were ready to speak next. You said that one thing about diversity. Anything else you had for me?

MR. ROBERTSON: I'm going back to my list.

THE COURT: Yes.

MR. ROBERTSON: There are a --

THE COURT: Take your time.

MR. ROBERTSON: There are a few.

THE COURT: No pressure.

MR. ROBERTSON: One point is there's a repeated

mantra here that Mr. Causi took the existing COI from the policy itself, the exemplar, and typed over a letter. But looking at the face of the COI that's in the policy, and the COIs that were sent to Acrisure, it's clear that that's not the case. The names are different. All of the fonts are different. The information is different. It's an industry standard form that was printed out again. It wasn't taken from the exemplar policy COI and then changed.

So beyond that, he had mentioned about fraud and disclaimers and that a general disclaimer cannot abrogate a fraud claim essentially. This disclaimer here is very specific as to what the COI is and what the COI is not. And every New York court to address this language has held that it does bar fraud claims.

The case law that was cited in the letter, you know, that case law refers to the very general type of disclaimer in a contract that says neither parties relying on any statements that are not set forth in this agreement, full stop. You know, of course if there's more specific fraud that occurred, parties are not always intended to rely on that. But that's not the case here.

And I think that that catches up on everything that I had to respond to unless I forget.

THE COURT: So a couple of more questions for

Mr. Kosek just before we do briefing, things that were on my mind.

There's also this issue that was raised about the time span you're alleging in the complaint, a 13-month period. The Second Circuit has never found a close-ended pattern where the predicate acts span fewer than two years. So there's an argument that that's too short a period of time. What's your response to that?

MR. KOSEK: Well, there were other letters and other claims that were submitted under the policy after that were disclaimed because they believed that there was coverage, other tender letters that were sent by the owner, the other affected parties. So the parties in the public not part of this had tender letters later. And we don't have that information right now because we aren't those parties.

And I think that if we're going to talk about a pattern, there is a pattern here because every opportunity they had, every opportunity that they were able to act in furtherance of their fraud, they did. And I think that there are -- the Court says that there's no -- that that's not an absolute bar because it hasn't found -- it doesn't say that it can't exist. And under the right circumstances where we think he had the right circumstances exist where you have a party who had all

the information, all the knowledge, and had a duty to Defalco as their client. Maybe not under this exact policy, but a duty under the project and the client, and a duty to (indiscernible) A to Z, and they provided a document to Defalco knowing Defalco was going to rely on it. They said hey, rely on this. This is giving everyone coverage. Pass this around, give it to everyone.

So now there's -- and there's significant harm to my client. My client is losing business because of this. And that's the real problem that exists. They delay here is we need this to be -- you know, obviously they get a right to brief their motion, but it needs to be as soon as possible because my client is losing contracts left and right because this is hanging over his head. He has a loss run that has been destroyed because the claims that should have went to another insurance policy did not go there and now they're on his policy and his --

THE COURT: So what would be -- so what are you seeking that would be time sensitive? If your client's continuing to lose business, that's an element of your client's monetary damages. But you're seeking equitable relief?

MR. KOSEK: No, we're just asking for a

tighter, (indiscernible) motions. You know, this was supposed to be answered in early March. It's now almost the end of April. We're asking just for a tight window for a motion to be filed.

THE COURT: Well, let me ask you before we do that, and I'm not looking to give the parties a million years to brief this motion, but let me ask you the question of, you know, now that you've read defendant's letters about the sufficiency of your complaint, do you want to file an amended complaint prior to the Court considering this motion? And I don't think it's going to change the defendant's position, so it's totally up to you, right?

But there were some arguments as to sufficiency. I'm not saying I agree with them or don't. I'm not saying you should agree with them or don't. But what I don't want to do is get briefing, write a decision on this, and then you say oh, but I can fix this by amending the complaint.

So is that something you want to do or this is your ride and die complaint we've got here?

MR. KOSEK: This is our complaint. However, if the Court, and the Court renders its decision and allows for an amendment, then we would obviously take that.

THE COURT: No, no, no. So --

MR. KOSEK: That's all I'm saying.

THE COURT: That's what I'm saying is --

MR. KOSEK: No, we're going to stick to our pleading but if the Court says, you know, oh this could be amended or, you know, submit an amended pleading, we're not going to say no, get out of here, Court.

THE COURT: Right. No, I get it.

MR. KOSEK: That's all I want to reserve.

THE COURT: But what I'm trying to say on the flip side is the Court's also not going to act as the lawyer here and say oh, here's how your complaint is pled, amend again. If I'm going to consider the motion to dismiss, then that'll play into -- again, I don't know how I'm going to rule so I don't want to preclude exactly what you said by giving you the opportunity.

But what I'm saying is I want to give you the opportunity now. If you believe there are pleading issues that can be corrected, to do that before we go through with the motion practice. But it sounds like --

MR. KOSEK: We do not think --

THE COURT: -- you don't feel that way. Okay.

MR. KOSEK: No, your Honor. Thank you though.

THE COURT: That's fair. So how long do you need to file the motion?

MR. ROBERTSON: We could file the motion

quickly, whenever -- two weeks, one week.

THE COURT: Two weeks is fine. One week?

MR. ROBERTSON: I'm bidding against myself.

THE COURT: Right. Exactly. Come on.

MR. ROBERTSON: Two weeks is great.

THE COURT: I'd rather you have the time to write it in a persuasive way that thoroughly deals with all the authority. Two weeks is fine. I think that that's a very ambitious timeline.

And you know look, I will say this. If I read it, also just to your point, Mr. Kosek, if I read it and I'm starting to get the motions in -- because I'm not a bundler, so you're going to file it, so I'm going to get your brief right away. If I read it and thinking like hm, you know, something is going to survive this and it's probably going to survive it in federal court, there's a good chance it will, then I'll call you all in for an initial conference. We'll start discovery even before I write the decision.

So I don't want you to feel like the briefing schedule is going to somehow -- I haven't reached a decision that discovery would be stayed in this case either. So I tell you that, Mr. Kosek, to reassure you. All right?

MR. KOSEK: I appreciate it. The only thing is

that it was filed, you know, it's been a while since it was filed. That's all I was saying. I'm not asking --

THE COURT: I hear you.

MR. KOSEK: I'm not telling him to file it tomorrow.

THE COURT: They're not. They're filing it in two weeks.

MR. KOSEK: I'm not saying that they should file it tomorrow. I'm not saying how dare you give them two weeks. I just want -- you know, 60 days would have been a problem. That's all I was saying.

THE COURT: Exactly.

MR. KOSEK: I was just laying the groundwork for 60 day objection. That's all.

THE COURT: I was literally about to say to you, I was about to say it's not like they asked me for 60 days.

MR. KOSEK: We're on the same page on that.

THE COURT: How long do you need to oppose?

MR. KOSEK: Three weeks?

THE COURT: Three weeks. Okay. So two weeks would be, let me just get this down so I'm not -- would be the 4th of May, 5/4. Three weeks from that would be --

MR. KOSEK: 25th?

THE COURT: No, it wouldn't. That's Memorial Day.

MR. KOSEK: Oh, never mind. I'm sorry.

THE COURT: The 26th.

MR. KOSEK: That works for me. Sorry about that.

THE COURT: Okay. So see, he's pushing you but he's willing to put in the brief the day after Memorial Day, so --

MR. KOSEK: Exactly. I'm going to work on Memorial Day.

THE COURT: It's like putting his money where his mouth is.

MR. KOSEK: Exactly. I will work all day Memorial Day for this.

THE COURT: Is a week for the reply too short? You want two weeks for the reply?

MR. ROBERTSON: There are sufficiently numerous issues that -- and to vet everything with the client --

THE COURT: Say no more.

MR. ROBERTSON: Thank you. I appreciate it.

THE COURT: That would be -- let me just make sure I'm getting my dates here. Yes, that would be June 9th.

MR. KOSEK: I forgot how many days are in each

month.

THE COURT: All right? I'll take it under advisement. Like I said, I will also be looking as these come in. Like I said, I don't know that I'm going to make an official decision as to a stay, but we would probably be setting an initial conference to discuss discovery sometime after the briefing is completed. So I think what we'll probably do is set that in the usual course.

Defendant, if at some point you want a stay, you'll say adjourn the initial conference, we think discovery should be stayed. By then hopefully I'll have some sense of the more detailed briefing and how it's going and I can rule on that.

But otherwise, let's assume sometime in late June or early July and you'll get the order sometime soon. We'll be setting up an initial conference just in case.

MR. KOSEK: Perfect.

THE COURT: Okay?

MR. KOSEK: Thank you, your Honor.

MR. VITA: Your Honor?

THE COURT: Yes?

MR. VITA: May I request --

THE COURT: Yes, Mr. Vita.

MR. VITA: My colleague is probably --

MR. ROBERTSON: I think I'm going to get what you're going to say which is --

THE COURT: Well, let's have Mr. Vita say it because --

MR. ROBERTSON: I'll let him speak, let the man speak.

THE COURT: -- he hasn't said anything this entire conference.

MR. VITA: Your Honor, we had asked for an extra ten pages for our motion to dismiss for our brief. We think that that's appropriate given --

THE COURT: You've got it.

MR. VITA: Thank you.

THE COURT: You've got it. And you can take an extra ten pages if you want to. We'll see how it goes.

MR. KOSEK: I don't know. That's fine.

THE COURT: Yes. All right. Anything further from you, Mr. Kosek?

MR. KOSEK: No. That's it for us.

THE COURT: All right. Mr. Robertson, Mr. Vita?

MR. VITA: No, your Honor.

THE COURT: Okay. If there are any issues with the briefing, just write me a letter. I always remind

people, I wouldn't think I'd need to remind people, but sometimes I do, is don't miss a deadline. Put in a letter, explain to me what's going on, and I'll rule based on.

Like I said, I may be seeing you again at the initial conference. Or if not, you'll be seeing my decision, whatever. But I appreciate you all taking the time to talk these issues through with me. Very interesting issues. I look forward to reading the brief.

MR. KOSEK: Thank you, your Honor.

THE COURT: Have a great rest of the day. We're adjourned.

MR. ROBERTSON: Thank you, your Honor.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **22nd** day of **April**, 2026.

Mary Greco

Transcriptions Plus II, Inc.